UNITED STATES of America ex rel. Rudolph BONNER, Petitioner-Appellant,

v.

Richard DeROBERTIS, Warden and the Attorney General of Illinois, Respondents-Appellees.

No. 85–1877.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 13, 1986.

Decided Aug. 19, 1986.

As Amended Sept. 5, 1986.

---

**1064**

Anne M. Burke, Chicago, Ill., for petitioner-appellant.

Terence M. Madsen, Office of Illinois Atty. Gen., Chicago, Ill., for respondents-appellees.

Before CUMMINGS, Chief Judge, RIPPLE, Circuit Judge, and ESCHBACH, Senior Circuit Judge.

RIPPLE, Circuit Judge.

In 1980, following a jury trial in state court, the appellant, Rudolph Bonner, was convicted of rape, deviate sexual assault, unlawful restraint and armed violence. He is currently in the custody of the Illinois Department of Corrections. After exhausting his state remedies, Mr. Bonner filed a petition for habeas corpus in the district court. On March 29, 1985, the district court, on respondents' motion for summary judgment, denied Mr. Bonner's petition. We affirm the district court's judgment.

*Facts*

At approximately 12:30 a.m. on October 19, 1979, Patricia Phillips was walking alone on her way home. As she passed through a park, someone approached her from behind, pushed her to the ground and said: "If you scream, I'll kill you. See the knife?" Tr. 294. The assailant told Ms. Phillips that he knew her sisters, Wanita and Pat. She informed him that she was Pat. The assailant then forced Ms. Phillips to walk over to some bushes near a lighted basketball court. There he raped her. Ms. Phillips testified that she had several opportunities to observe the offender during the crime.

Following the attack, the victim immediately went home. When the police arrived, she gave them a description of her attacker. She described him as 5'4" tall, weighing approximately 135 pounds. She said that he wore gold-framed glasses, had a goatee, possibly had a chipped tooth and wore a dark skull cap and a class ring. Initially, Ms. Phillips said that she did not recognize her assailant. However, while receiving treatment at the hospital, she indicated that the offender may have been Rudolph Bonner. Mr. Bonner was a high school acquaintance whom she had not seen for ten years.

Immediately after treatment at the hospital, Ms. Phillips went to the police station. Although Mr. Bonner's picture appeared twice in four books of photographs, Ms. Phillips did not identify anyone. Later that day, Ms. Phillips was asked to return to the

police station to view a line-up. Despite the fact that officers told her they had Mr. Bonner in custody, she could not identify him. After a brief conversation with one of the police officers, Ms. Phillips viewed a second line-up. This time she selected the defendant, the only individual in the line-up with a goatee. According to testimony, Mr. Bonner is approximately 6 feet tall and weighs 165–170 pounds.

Following a trial in which both the pretrial and in-court identifications were admitted into evidence, the jury returned a guilty verdict. Mr. Bonner appealed the conviction to the Illinois Appellate Court where he raised six issues: (1) whether the identification testimony of the complainant was sufficient to prove him guilty beyond a reasonable doubt; (2) whether there was sufficient evidence to prove sexual intercourse; (3) whether the trial court erred by not *sua sponte* giving a jury instruction defining sexual intercourse; (4) whether the court erred by giving an instruction on admissions; (5) whether the prosecutor's comments during closing arguments prejudiced the trial; and (6) whether Mr. Bonner's conviction for armed violence; unlawful restraint; and rape violated the one act—one crime rule. The appellate court found some merit in the final issue and, while affirming the rest of the conviction, it reversed the jury's verdict on the armed violence count. It held, however, that the unlawful restraint charge and the rape charge were based on independent acts. Mr. Bonner petitioned for leave to appeal to the Illinois Supreme Court. He raised only one issue: "whether the failure to tender a jury instruction defining an essential element of the crime automatically implies a deliberate choice by defense counsel and thereby precludes appellate review." R. 23, App. A at 2. The Illinois Supreme Court refused to grant leave to appeal.

Mr. Bonner raised six issues in his petition for habeas corpus filed in the district court. The first five are the same as those raised in the Illinois Appellate Court. Hav-

ing been accorded some relief by the state court on the last issue, Mr. Bonner asked the district court to hold that the rape charge and the unlawful restraint charge also violated the one act—one crime rule. Holding that there was no genuine issue of material fact, the district court granted the respondents' motion for summary judgment and dismissed the habeas petition. On appeal, Mr. Bonner once again raises six issues. He also argues that the cumulative effect of the errors deprived him of his right to a fair trial.

*Procedural Waiver*

■ We must first address an issue raised only tangentially by the parties. A federal court, reviewing a state conviction under 28 U.S.C. § 2254 (1966), may, as a general rule, consider only those contentions which the prisoner presented for decision to the state courts in the manner prescribed by state law. *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977). As noted in the preceding section, in this case, after his conviction was affirmed in the Illinois Appellate Court, Mr. Bonner filed a petition for leave to appeal in the Illinois Supreme Court.[1] In that petition, he raised a single issue. No other issue was presented to the Illinois Supreme Court.

In *Nutall v. Greer,* 764 F.2d 462, 465 (7th Cir.1985), this court held that "a convicted state prisoner who fails to seek leave to present to the highest state court the constitutional objections that form the basis of his federal habeas petition waives these objections unless he can show cause for his default and prejudice from the alleged constitutional infirmities." We noted that this holding is the natural outgrowth of our earlier decision in *United States ex rel. Spurlark v. Wolff,* 699 F.2d 354 (7th Cir.1983) (*en banc*). *Id.* We held there that a prisoner's failure to present a constitutional claim in his direct appeal constitutes, absent a showing of cause and prejudice, a forfeiture of federal habeas review of the claim. *Spurlark,* 699 F.2d at 361.

---

1. At the time of the filing of this petition, Mr. Bonner, although represented by counsel, was not represented by the attorney who represents him on this appeal.

Under normal circumstances, therefore, Mr. Bonner's failure to present his other contentions to the Illinois Supreme Court would preclude his raising them in this section 2254 proceeding.

 This is not, however, the "normal" case. The State of Illinois has not argued, either before the district court or here on appeal, that Mr. Bonner has waived all of his contentions by not presenting them to the Illinois Supreme Court.[2] In *Barrera v. Young*, 794 F.2d 1264, 1268 (7th Cir.1986), this court held that the state may waive "the protection of the *Wainwright* doctrine by its inattention to it."[3] Here, the state has clearly failed to rely on Mr. Bonner's procedural default. Therefore, with the exceptions discussed in the following paragraphs,[4] we shall address the merits of the petitioner's claims.

*Sufficiency of the Identification*

Mr. Bonner argues that Ms. Phillips' identification was not sufficient to establish beyond a reasonable doubt that he was the assailant. As the district court noted, Ms. Phillips' identification was not perfect. There were some inconsistencies between her original description of the assailant and Mr. Bonner's actual appearance.[5] In addition, Ms. Phillips did not immediately name Mr. Bonner as the offender. She also failed to pick out Mr. Bonner's photograph from a group of pictures and she did not recognize him in the first line-up. On the other hand, when Mr. Bonner arrived at the police station, he wore gold-framed glasses, a dark skull cap and a class ring. He also had a chipped tooth and a goatee. Each of these characteristics matched Ms. Phillips' original description of her assailant. The jury considered both the consistent and inconsistent identification testimony. Its verdict reflects its judgment that beyond a reasonable doubt it was Rudolph Bonner who attacked Ms. Phillips.

 We will not reverse a state conviction for insufficient evidence of an element of the crime unless "upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 61 L.Ed.2d 560 (1979). The fact that Ms. Phillips did not immediately name Rudolph Bonner as her assailant or pick out his picture from a collection of photographs does not present such a situation. Ms. Phillips had not seen Mr. Bonner for more than ten years. She attempted to make the identification only a few hours after a traumatic experience. Her unsuccessful initial attempts at a positive identification did not make it impossible for reasonable jurors to find Mr. Bonner guilty. Similarly, Ms. Phillips' failure to identify the defendant in a line-up does not raise a reasonable doubt. A reasonable juror could have inferred that Ms. Phillips was cautious and careful before accusing a man of rape.

 Moreover, the inconsistencies in the identification and Ms. Phillips' initial

---

**2.** The State argues that the issues regarding suggestiveness of the out-of-court identification and the decision of the trial court to permit leading questions of the victim are waived because of failure to raise the issues before the Illinois Appellate Court. We agree. *See infra* note 6.

**3.** In *Barrera v. Young*, 794 F.2d 1264, 1269 (7th Cir.1986), we left open the possibility that a state might decide "to entrust to the judicial branch alone the power to surrender the protection of *Wainwright*." In Illinois, the Attorney General, who represents the respondent here, exercises the broad powers enjoyed by the holder of that office at common law. *Fergus v. Russel*, 270 Ill. 304, 110 N.E. 130 (1915). He is not limited to the exercise of those powers which are statutorily prescribed. *People v. Buf-*

*falo Confectionery Co.*, 78 Ill.2d 447, 453–54, 36 Ill.Dec. 705, 708, 401 N.E.2d 546, 549 (1980); *Saxby v. Sonneman*, 318 Ill. 600, 606, 149 N.E. 526 (1925); *Hunt v. Chicago Horse & Dunamy Ry. Co.*, 121 Ill. 638, 642, 13 N.E. 176 (1887). Therefore, we are quite justified in relying on his implicit representation, by addressing the merits in his brief, that the State waives Mr. Bonner's procedural default.

**4.** *See supra* note 2; *see also infra* note 6.

**5.** The victim originally described a man with a goatee, 5'4" tall weighing approximately 135 pounds. Mr. Bonner has both a moustache and a goatee. He is 6' tall and weighs approximately 165–170 pounds.

failure to recognize the offender must be weighed against several other factors. Ms. Phillips testified that she had several opportunities to observe the assailant during the attack which occurred near a lighted basketball court. Ms. Phillips also positively identified the skull cap and class ring belonging to the defendant. This weighing process is precisely the function of the jury. We cannot hold, based on the record evidence, that no reasonable juror could find beyond a reasonable doubt that Mr. Bonner was the assailant.[6]

*Sufficient Evidence of Penetration*

■ To obtain a conviction for rape, the state must also prove beyond a reasonable doubt that the assailant had sexual intercourse with the female victim by force and against her will. Ill.Rev.Stat. ch. 38, § 11–1(a). Mr. Bonner argues that the evidence of penetration[7] was not sufficient to convict him of rape. We disagree. When evaluated in its totality, the testimony of the victim clearly establishes this element of the crime.

*Instruction on Sexual Intercourse*

Although the defendant never requested an instruction defining sexual intercourse, he now argues that the court's failure to give that instruction *sua sponte* requires reversal of his conviction.[8] The Illinois Appellate Court concluded that trial counsel had deliberately chosen to disregard the issue of penetration and to rest his defense on misidentification. The defenses are not mutually exclusive. However, the state court noted that there are strategic reasons for not pursuing both theories. Because the defendant deliberately failed to request an instruction, the state appellate court considered the issue waived.

■ The Supreme Court has held that submission of an erroneous instruction will support a collateral attack on the constitutionality of a state court judgment only if the erroneous instruction " 'by itself so infected the entire trial that the resulting conviction violates due process.' " *Henderson v. Kibbe*, 431 U.S. 145, 154, 97 S.Ct. 1730, 1737, 52 L.Ed.2d 203 (1977) (quoting *Cupp v. Naughten*, 414 U.S. 141, 147, 94 S.Ct. 396, 400, 38 L.Ed.2d 368 (1973)). "It is the rare case in which an improper instruction will justify reversal of a criminal conviction when no objection has been made in the trial court." *Id.* "An omis-

6. The court has reviewed a photograph of the line-up. People's Ex. 3. To the extent that petitioner argues that the suggestive nature of the line-up created, as a matter of law, a reasonable doubt about the identification of Mr. Bonner, the court concludes that the argument is unpersuasive. Mr. Bonner also argues that he was denied a fair trial because the trial court erred by admitting the victim's pre-trial and in-court identifications of the defendant. Mr. Bonner claims that, because he was the only individual with a goatee in the second line-up, it was unconstitutionally suggestive. He also argues that there is insufficient evidence to ensure that Ms. Phillips' in-court identification was reliable. This issue was not raised before the Illinois Appellate Court and, here, the respondent has maintained that the failure to raise the matter in the state court constitutes waiver. *See supra* note 2; *see also United States ex rel. Spurlark v. Wolff*, 699 F.2d 354 (7th Cir.1983) (*en banc*). Mr. Bonner has not established cause for his failure to raise this issue in his appeal in the state court. Therefore, we will not consider it in this appeal.

For the same reason, we will not consider any argument that the trial court abused its discretion by permitting the prosecutor to ask leading questions during the direct examination of the victim.

7. "Sexual intercourse occurs when there is any penetration of the female sex organ by the male sex organ." Ill.Rev.Stat. ch. 38, § 11–1(b). The act of sexual intercourse need not be completed; the slightest evidence of penetration is sufficient to sustain a conviction for rape. *People v. Cole*, 39 Ill.App.3d 559, 350 N.E.2d 543, 545 (1976).

Although, during direct examination, the victim had some difficulty responding to questions, she clearly testified that her assailant tried to place his penis in her vagina and it kept sliding out. Tr. 300. In response to a leading question, she also said that he put his penis in her vagina twice. Tr. 310. Based on the record evidence, we cannot hold that a reasonable juror could not have found penetration beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 324, 99 S.Ct. 2781, 2791, 63 L.Ed.2d 560 (1979).

8. This issue was presented to the Illinois Supreme Court. The court denied Mr. Bonner's petition for leave to appeal.

sion, or an incomplete instruction, is less likely to be prejudicial than a misstatement of the law." *Id.* at 155, 97 S.Ct. at 1737. Therefore, the burden of establishing prejudice is greater when there is an omission rather than an erroneous instruction. *United States ex rel. Peery v. Sielaff,* 615 F.2d 402, 404 (7th Cir.1979), *cert. denied,* 446 U.S. 940, 100 S.Ct. 2163, 64 L.Ed.2d 794 (1980). Like the district court, we believe that the Illinois Appellate Court's evaluation of the litigation strategy of the defense may well be accurate. Moreover, given the evidence on the question of penetration, the court's failure to define sexual intercourse as penetration, did not prejudice the defendant. In this case, the lack of the instruction did not violate due process.

*Admission Instruction*

■ The petitioner also claims that the court erroneously read an instruction on admissions to the jury.[9] When Mr. Bonner voluntarily arrived at the police station, he admitted that he knew the Phillips sisters. The defendant argues that the statement did not establish an element of the crime and, therefore, it was not an admission. Although the instruction initially appears to indicate that the defendant had made an admission, it ultimately directs the jury to determine both whether the defendant actually made the admission and the weight that should be accorded his statement based on all the circumstances under which it was made. This instruction did not so infect the trial that it violated the defendant's due process rights. *See Henderson,* 431 U.S. at 147, 97 S.Ct. at 1732.

*Prosecutor's Closing Argument*

During closing argument, the prosecutor suggested that the victim was mentally slow and that the assailant knew her and

took advantage of her. Tr. 487–88. The prosecutor also observed that he thought Mr. Bonner considered the trial a "big joke." Tr. 472. Mr. Bonner argues that the evidence presented at trial did not support these prejudicial statements.

■ It is well-established under Illinois law that a prosecutor may comment on the evidence and the reasonable inferences drawn from that evidence. *People v. Weatherspoon,* 63 Ill.App.3d 315, 20 Ill. Dec. 14, 20, 379 N.E.2d 847, 853 (1978). The prosecutor's argument that the victim was mentally slow was a comment on the demeanor of the witness. His argument finds some support in the record. During a sidebar conference, the judge noted that the victim was "extremely slow mentally." Tr. 394. The prosecutor's statement about the victim's mental ability was a permissible comment based on the demeanor of the witness. It did not prejudice the defendant. The victim testified that she told the assailant that she was Pat, establishing that the assailant was aware of the identity of his victim. The prosecutor then drew the inference for the jury that because the assailant knew his victim he took advantage of her. After the closing arguments, the judge instructed the jury that the arguments were not evidence and that they could choose to disregard any argument not based on evidence. Tr. 531.

■ The prosecutor's comment that he thought Mr. Bonner believed the trial was "a big joke," is another matter. Nothing in the record indicates that the defendant displayed a lack of respect for the seriousness of the proceedings. The prosecutor's comment at least suggested that he had some knowledge not available to the jury. To reverse the conviction on the basis of this remark, however, would require us to find that the comment "so infected

---

**9.** At the end of the trial, the judge instructed the jury:

> You have before you evidence that the defendant made an admission of a fact or facts relating to the crime charged in the indictment.

> It is for you to determine whether the defendant made the admission, and if so, what weight should be given to the admission. In determining the weight to be given to an admission, you should consider all of the circumstances under which it was made. Tr. 539.

the trial with unfairness as to make the resulting conviction a denial of due process." *Donnelly v. DeChristoforo*, 416 U.S. 637, 643, 94 S.Ct. 1868, 1871, 40 L.Ed.2d 431 (1974). We do not believe that the prosecutor's comment had such an effect on this trial. The judge immediately sustained an objection to the comment thereby reducing its prejudicial impact. The central issue in the case was Ms. Phillips' identification. It is not likely that the jury's perception of Mr. Bonner's attitude would have significant impact on whether it chose to credit the victim's testimony. The focus of due process analysis in cases of prosecutorial misconduct is "fairness of the trial not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219, 102 S.Ct. 940, 947, 71 L.Ed.2d 78 (1982). We certainly do not condone the prosecutor's actions. However, we cannot hold that the comment—immediately corrected by the trial judge—deprived Bonner of his right to a fair trial. *See United States ex rel. Crist v. Lane*, 745 F.2d 476, 482 (7th Cir.1984).

*Conclusion*

Considering the alleged errors either in isolation or taken together, we hold that the defendant received a fundamentally fair trial. We do express concern about the prosecutor's remark that the defendant considered the trial a "big joke." It did not, however, deprive Mr. Bonner of a right protected by the federal constitution. Accordingly, the judgment of the district court, granting the respondents' motion for summary judgment, is affirmed.

AFFIRMED.