UNITED STATES of America,
Plaintiff–Appellee,

v.

Timothy TURK and Veronica Joyner,
Defendants–Appellants.

Nos. 88–1171, 88–1172.

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 8, 1989.
Decided March 22, 1989.

Richard F. Walsh, Alan M. Freedman, Chicago, Ill., for defendants-appellants.

Lisa A. Huestis, Asst. U.S. Atty., Chicago, Ill., for plaintiff-appellee.

Before WOOD, Jr., POSNER and COFFEY, Circuit Judges.

HARLINGTON WOOD, Jr., Circuit Judge.

Defendants Veronica Joyner and Timothy Turk were charged in a twenty-three count indictment for embezzlement, false statements, and wire fraud under 18 U.S.C. §§ 2, 641, 1001, 1014, and 1343. Joyner was also indicted for making a false state-

ment to an FBI agent. After a ten-day trial the jury convicted them on almost every count. Joyner and Turk now seek to set aside their convictions because, they argue, the court improperly denied motions for severance and continuance, the prosecution made improper statements in the closing argument, and a witness made a prejudicial comment while testifying. We reject the defendants' arguments and affirm the conviction.

## I. FACTS

Veronica Joyner and Timothy Turk operated various small companies including TVJ Associates which did business as Almega International and specialized in export-import transactions. In the fall of 1982, the defendants read about a new Small Business Administration (SBA) program that guaranteed loans of revolving lines of credit from private banks to small businesses involved in exporting American products to foreign countries. The defendants contacted Sears Bank in Chicago to obtain financing guaranteed by the SBA for the sale of corn to the Greek government. They applied for a loan and in the process represented to Sears Bank and the SBA that they had structured a deal in which they would buy corn in Iowa, ship it through New Orleans, and sell it to the Greek government. Sears Bank and the SBA approved the loan; Joyner signed the loan authorization. In May 1983, Sears Bank backed out of the agreement but forwarded the loan application to the Michigan Avenue National Bank (MANB). MANB granted the loan and the SBA guaranteed it.

The defendants received $500,000 in twelve installments over the next four years. During that time the defendants represented to MANB that they were using the loan to finance the Greek transaction, presented fake documents to MANB to prove that the Greek transaction was being carried out, and established a dummy grain supply company to mislead MANB into believing that they had purchased corn to export to Greece. In fact, the defendants had not bought corn or sold it to the Greek

government. In addition to making misrepresentations to the banks and the SBA, Joyner told an FBI agent that TVJ Associates had used part of the loan to post a performance bond in connection with the Greek deal when it had not.

The defendants also sought funding for their business through another government program. The defendants hired disadvantaged individuals through the Chicago Alliance of Business Employment and Training (CABET), a nonprofit company funded by the federal government. CABET promised to reimburse TVJ Associates for salaries paid to these employees. Apparently TVJ Associates did not always pay its employees, although it sought and obtained reimbursement from CABET.

After indictment for these activities, Joyner's court-appointed attorney filed a pre-trial motion for severance and a separate trial, arguing that the codefendants' positions were mutually antagonistic. The trial court denied the motion. On November 17, 1987, Joyner's attorney moved to withdraw as counsel upon Joyner's request and the court appointed new counsel. Joyner's new counsel stated that he would be prepared for trial on December 3.

On December 1, 1987, the morning of trial, the district court stated that it had received a letter from Joyner requesting a continuance to obtain private counsel or, in the alternative, to represent herself pro se. Joyner's second attorney then orally moved for a continuance in order that he could withdraw because of Joyner's apparent displeasure with his representation. The district judge denied the continuance because the letter was received the day before trial and Joyner had, in his view, a good attorney appointed to represent her.

The case went to trial that day. Joyner was convicted on all counts while Turk was convicted on all counts except one. Both were sentenced to five years in prison and five years probation conditioned on their obtaining psychiatric treatment and making restitution. Joyner and Turk appeal.

## II. ANALYSIS

Joyner challenges three aspects of the trial. She claims that the district court

abused its discretion in denying her motion for severance. She also argues that the district court abused its discretion in rejecting her motion for a continuance on the morning of the trial. Finally, she claims that the government's rebuttal argument prejudiced her counsel by claiming that counsel must be "kidding" in presenting her defense. Turk joins the challenge to the "kidding" reference and also demands a new trial because the prosecution permitted a witness to make, what he considered to be, an improper response to a question. Having jurisdiction under 28 U.S.C. § 1291, we address Joyner's claims first.

### A. Motion for Severance

Joyner contends that the district court abused its discretion by denying her motion for severance. Joyner contends that her codefendant Turk took a position antagonistic to her own. Turk claimed that he was not a knowing participant in the SBA scheme but an "errand boy" for Joyner. Joyner argued that she was simply in a business deal that was "over her head," that her statements and actions were truthful, and that the prosecution had not proven its case against her.

Pursuant to Rule 14 of the Federal Rules of Criminal Procedure, a district court may grant severance if codefendants assert mutually antagonistic defenses. *United States v. Goudy,* 792 F.2d 664, 673 (7th Cir.1986). Defenses are mutually antagonistic only where acceptance of one defendant's position precludes the acquittal of the other defendant. *United States v. Rollins,* 862 F.2d 1282, 1289 (7th Cir.1988). There is a "strong public interest in having persons jointly indicted tried together, especially where the evidence against the defendants arose out of the same acts or series of acts." *United States v. Oxford,* 735 F.2d 276, 280 (7th Cir.1984). We will, therefore, reverse a district court's decision on a severance motion only upon a showing that the court abused its discretion, *Rollins,* 862 F.2d at 1289; *United States v. Bruun,* 809 F.2d 397, 407 (7th Cir.1987), and limit our review to the state of the

record at the time the motion was made. *Rollins,* 862 F.2d at 1289.

Joyner's claim is virtually identical to the severance issue raised in *United States v. Bruun,* 809 F.2d 397 (7th Cir.1987). In *Bruun* the appellant-defendant Berkowitz moved for severance on the grounds that his defense was antagonistic to that of his codefendant. *See* 809 F.2d at 407. Berkowitz claimed that the government failed to prove his guilt beyond a reasonable doubt; his codefendant argued that he was unaware of any illegal activity and merely followed Berkowitz's instructions. *Id.* The codefendant, in effect, argued that Berkowitz conned him into engaging in the illegal activity. In *Bruun* we stated that these defenses were not mutually exclusive. *Id.* A jury could find that Berkowitz had duped his codefendant into engaging in allegedly illegal activity and at the same time acquit Berkowitz for lack of evidence of his guilt. *Id.* "While there was no doubt some hostility and finger pointing during the joint trial, this alone is insufficient to justify granting a severance." *Id.*; *see also United States v. Buljubasic,* 808 F.2d 1260, 1263 (7th Cir.), *cert. denied,* —— U.S. ——, 108 S.Ct. 67, 98 L.Ed.2d 31 (1987) ("Finger-pointing is an acceptable cost of the joint trial and at times is even beneficial because it helps complete the picture before the trier of fact").

Recognizing that our decision in *Bruun* is directly on point, Joyner attempts to distinguish the two trial scenarios. She argues that in *Bruun* the codefendant made only minor references to his innocence in a trial that lasted three weeks. *See Bruun,* 809 F.2d at 407. The judge in *Bruun* minimized prejudice and confusion by instructing the jury to focus on the evidence as it applied to each defendant separately. *Id.* Joyner argues that Turk's defense, in comparison, permeated the entire trial because Turk testified and his defense was presented in both opening and closing argument.

Joyner's argument misses the essential point of *Bruun.* If one defendant claims that he was uninvolved or duped into participating in questionable activity, a jury

can still acquit a codefendant on the grounds that the prosecution failed to prove that the questionable activity was illegal. *See United States v. Gironda,* 758 F.2d 1201, 1220 (7th Cir.), *cert. denied,* 474 U.S. 1004, 106 S.Ct. 523, 88 L.Ed.2d 456 (1985). Regardless of Turk's claim that he was unaware of what was transpiring and that he simply took orders from Joyner, the prosecution still was obligated to prove that Joyner intentionally defrauded the government. Joyner, who claims that the prosecution did not prove its case, was not precluded from acquittal by Turk's argument that he was unaware of what was happening. The defenses are not mutually antagonistic.

### B. Motion for Continuance

■ Joyner also claims that the district court abused its discretion because it refused to grant a continuance in order for Joyner to hire new counsel. Joyner argues that the denial of the continuance infringed upon her sixth amendment right to counsel. The district court received a letter from Joyner the day before trial. In the letter Joyner asked for a continuance in order to hire counsel because she was unhappy with her appointed counsel's preparation for the case. The district court denied the continuance.

A trial court has broad discretion in deciding whether to grant or deny a motion for a continuance. *Morris v. Slappy,* 461 U.S. 1, 11, 103 S.Ct. 1610, 1616, 75 L.Ed.2d 610 (1983). We will not disturb a district court's decision to deny a continuance unless the district court abused its discretion. *United States v. Bush,* 820 F.2d 858, 860 (7th Cir.1987). To establish an abuse of discretion, Joyner must show that actual prejudice resulted from the denial. *United States v. Hamm,* 786 F.2d 804, 806 (7th Cir.1986). "[O]nly an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay' violates the right to the assistance of counsel." *Id.* 461 U.S. at 11–12, 103 S.Ct. at 1616 (quoting *Ungar v. Sarafite,* 376 U.S. 575, 589, 84 S.Ct. 841, 849, 11 L.Ed.2d 921 (1964)).

■ The record shows that the district court was more than justified in proceeding to trial under the circumstances. Joyner presented her request for a continuance on the eve of trial. The court had already allowed Joyner one opportunity without explanation to obtain new counsel and appointed new counsel two weeks before trial. Joyner's new appointed counsel informed the judge that he had prepared the case, that he had reviewed all the case documents, and that he had served trial subpoenas on Joyner's behalf. The district court had observed appointed counsel in court on previous occasions and felt that Joyner was receiving good representation. Finally, the district court noted that witnesses from Greece and other outlying areas were present to testify and it would be difficult to reassemble them at a later date. Given these circumstances—the lateness of the request, the judge's accommodation of Joyner's previous request for new appointed counsel, the presence of foreign witnesses, the adequacy and preparation of appointed counsel—the district court was well within its discretion in denying the continuance. The district court balanced the various interests involved to make its determination; we will not second-guess a decision that was supported by the record.

Furthermore, Joyner does not claim that she was actually prejudiced by appointed counsel's performance. Joyner argues that she was prejudiced because she could not proceed with counsel of her choice in whom she had confidence. Joyner's argument can be easily refuted. As we noted in *United States v. Solina,* 733 F.2d 1208, 1211 (7th Cir.), *cert. denied,* 469 U.S. 1039, 105 S.Ct. 519, 83 L.Ed.2d 408 (1984), a court is not required to allow a last minute change in counsel that would disrupt the court schedule. Defendant does not have an absolute right to counsel of choice without regard for judicial integrity and efficiency. *See Morris,* 461 U.S. at 11–13, 103 S.Ct. at 1616–1617. More importantly, the sixth amendment does not guarantee a "meaningful attorney-client relationship" between the accused and counsel. *See Morris,* 461 U.S. at 13–14, 103 S.Ct. at 1617–1618. As these precedents indicate,

the district court is under no duty to guarantee that Joyner and her counsel had good rapport, only that Joyner was not prejudiced through inadequate representation. Joyner's counsel informed the district court that he spent over fourteen hours with Joyner. He also indicated at the time he submitted a *motion* to withdraw, at Joyner's request, that he had prepared for trial. The sixth amendment requires the court to satisfy itself that the defendant is adequately represented, not to speculate on the complex emotional relationship of a client and her lawyer. Joyner's claimed lack of confidence in her appointed counsel is not sufficient to overcome the deference accorded the district court under the abuse of discretion standard.

Joyner also argues that she was prejudiced by her counsel's failure to move for withdrawal before the morning of trial. It is not clear to us how the district court's denial of Joyner's motion for a continuance caused this "prejudice." Apparently, Joyner is either claiming a direct violation of her sixth amendment right to counsel or suggesting that the district court's denial caused Joyner to be stuck with counsel who had a tendency to make untimely motions. Both theories fail. Joyner's counsel stated that he had prepared for trial but would make the motion if Joyner did not want him to represent her. A prepared attorney does not require a continuance, nor is he expected to seek one. In fact, there is no indication that Joyner's counsel knew that Joyner wanted him to withdraw before the morning of the trial. The failure of Joyner's counsel to make the motion prior to the morning of the trial does not indicate inadequacy of counsel or a tendency to make untimely motions.

*C.  Prosecutor's Closing Argument*

■ Both defendants Joyner and Turk contend that they were denied a fair trial because of two remarks in the prosecutor's rebuttal argument. In the rebuttal, the prosecution stated, "I like these defense

lawyers, I've worked with them before—they must be kidding" and "It's at this point, ladies and gentlemen, that we start to get to the point where we've got to be talking about a joke here." Defendants claim that these comments were inappropriate and prejudicial because they impugned the honesty and integrity of defense counsel.[1]

We apply two tests to a question of prosecutorial misconduct in a federal trial. When examining a prosecution's rebuttal argument for constitutional error, we analyze whether the prosecution's comments " 'so infected the trial with unfairness as to make the resulting conviction a denial of due process.' " *Darden v. Wainwright*, 477 U.S. 168, 181, 106 S.Ct. 2464, 2472, 91 L.Ed.2d 144 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 94 S.Ct. 1868, 40 L.Ed.2d 431 (1974)); *see also United States v. Pirovolos*, 844 F.2d 415, 425 (7th Cir.1988). We review the allegedly unfair comments within the context of the entire record, *United States v. Brantley*, 786 F.2d 1322, 1330 (7th Cir.), *cert. denied*, 477 U.S. 908, 106 S.Ct. 3284, 91 L.Ed.2d 572 (1986), and consider the probable effect that the prosecution's comments had on the jury's ability to judge the evidence fairly. *United States v. Young*, 470 U.S. 1, 12, 105 S.Ct. 1038, 84 L.Ed.2d 1 (1985). On a direct appeal of a federal conviction, we also evaluate whether trial errors of less than constitutional dimension substantially influenced the result of the trial. *United States v. Pirovolos*, 844 F.2d at 425.

Under either test, the defendants' claim fails. Defendants place heavy reliance on our decisions in *United States v. Sblendorio*, 830 F.2d 1382 (7th Cir.1987), *cert. denied*, —— U.S. ——, 108 S.Ct. 1034, 98 L.Ed.2d 998 (1988), and *United States ex rel. Bonner v. DeRobertis*, 798 F.2d 1062 (7th Cir.1986). *DeRobertis* clearly does not apply; in *DeRobertis* the prosecutor made reference to the *defendant's* attitude toward the trial, which we find to be a markedly different situation than we have here. *See* 798 F.2d at 1068. In *Sblendorio* we

---

1. Defendants also argue that the comments reflected on Joyner's decision not to testify and interfered with the jury's ability to properly

balance the weight of the evidence. We find the arguments without merit.

made the point that the prosecution may call the defense's position "lame" but may not suggest that defense counsel is "sniggering" at the jury's gullibility in believing the defense. *United States v. Sblendorio*, 830 F.2d at 1395.

Without getting into a lengthy discourse on the legal implications of sarcasm and tone in language, we find that taken literally and out of context, the prosecution's comment that defense counsel must be "kidding" might suggest that the defense counsel did not believe its own argument and was trying to "pull one over" on the jury. Taken in the context of the prosecution's entire speech, however, we believe that, more correctly, the prosecution was attempting (through sarcasm) to show that defendants' arguments were groundless in light of the overwhelming evidence against them. Likewise, only through a strained reading could we conclude that the prosecution's comment about "a joke" was directed at defense counsel. From the record it is clear that the prosecution was commenting on the defendants' legal positions in light of the evidence.[2]

Regardless of the ultimate characterization of these comments, they did not deprive defendants of a fair trial. The trial lasted for seven days and contained abundant testimony and evidence. These two comments in light of the entire record did not substantially influence the jury decision or infect the trial with unfairness. The error, if any, was harmless. *See United States v. Hastings*, 461 U.S. 499, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983); *see also United States v. Sblendorio*, 830 F.2d at 1395.

*D. The Reply of the Prosecution's Witness*

Finally, we reach Turk's claim that the district court abused its discretion because it denied a motion for mistrial based on the testimony of a prosecution witness. The prosecution called Mr. Harold Beiler, the Chief of the Banking Services Division

of SBA's Chicago branch. The prosecution asked Mr. Beiler, "[W]hat is the source of the Small Business Administration's funds?" Mr. Beiler replied, "Taxpayers." Turk claims that the district court should have declared a mistrial because this answer is untrue and left each juror with a pecuniary interest in the outcome of the case.

Turk argues that the SBA is funded by the U.S. Treasury through complicated bond issues and debt financing and therefore is not funded by the taxpayer. We disagree with Turk. The money that oils this great bond-issue-and-debt-financing machine comes ultimately from the taxpayers. Mr. Beiler was right.

Turk also claims that the reference to taxpayers appealed to the jurors' pecuniary interest and tainted their objectivity. While we have in the past admonished prosecutors for inciting jurors through references to jurors' pecuniary interests in taxpayer fraud and insurance cases, we reject the assertion that a witness's solitary reference to taxpayers demands that a court declare a mistrial. *See United States v. Falk*, 605 F.2d 1005, 1012 (7th Cir.1979), *cert. denied*, 445 U.S. 903, 100 S.Ct. 1079, 63 L.Ed.2d 319 (1980); *United States v. Mackey*, 571 F.2d 376, 385 (7th Cir.1978).

Even if we were to find Turk's claim to have merit (which we do not), Mr. Beiler's response in the context of all the evidence presented was harmless error. The prosecution made no references to Mr. Beiler's comment and Turk's counsel effectively cross-examined Mr. Beiler on the issue at the time, drawing out testimony on the bond-financing theory.

We find Joyner's and Turk's challenges to the decisions of the district court baseless and therefore their convictions are

**AFFIRMED.**

---

**2.** We feel no need to comment on defendants' argument that we should reverse the conviction in order to deter future prosecutorial misconduct. Even if we were to characterize the prosecution's comments in this case as misconduct,

we have previously rejected the suggestion that we reverse a conviction to deter such activity. *See United States v. Pirovolos*, 844 F.2d 415, 427 (7th Cir.1988).