954 F.2d 726
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
Robert HARVEY, Petitioner-Appellant,
v.
Rodney AHITOW and Roland Burris,[2] State of
Illinois, Respondents-Appellees.
 No. 90-3359.
 United States Court of Appeals, Seventh Circuit.
 Submitted Feb. 10, 1992.[1]
Decided Feb. 14, 1992.
 
 Before POSNER and FLAUM, Circuit Judges, and FAIRCHILD, Senior Circuit Judge.
 
 ORDER
 
 1
 Robert Harvey was convicted of burglary after a jury trial in Illinois state court. He appeals the district court's denial of his petition for a writ of habeas corpus under 28 U.S.C. § 2254. Harvey alleges that he was denied effective assistance of counsel in the state court, and that his guilt was not established beyond a reasonable doubt. We affirm the judgment of the district court for the reasons set forth in the attached order.[3]
 
 ATTACHMENT
 UNITED STATES DISTRICT COURT
 CENTRAL DISTRICT OF ILLINOIS
 
 2
 ROBERT HARVEY, Petitioner,
 
 
 3
 vs.
 
 
 4
 RODNEY AHITOW, et al., Respondants.
 
 No. 90-2030
 
 5
 Sept. 13, 1990.
 
 ORDER
 
 6
 Robert Harvey, a prisoner in the Illinois Department of Corrections, seeks habeas relief under 28 U.S.C. § 2254. He was convicted of burglary in the Circuit Court of Champaign County, on December 10, 1986, and sentenced to 20 years imprisonment. The Illinois Appellate Court affirmed his conviction on October 22, 1987, and the Illinois Supreme Court denied leave to appeal. It appears that Harvey exhausted his state court remedies, and the respondents do not contend otherwise.
 
 
 7
 Harvey raises three grounds for relief: (1) ineffective assistance of counsel for failure to interview and investigate an alibi witness (ineffective assistance/failure to interview); (2) ineffective assistance of counsel at the post-trial hearing based on a conflict of interest when the trial attorney had to present a post-trial motion of his own incompetence (ineffective assistance/post-trial); and (3) insufficiency of the evidence.
 
 
 8
 Harvey raised the ineffective assistance/failure to interview/claim pro se just before jury selection. Harvey told the court that he wanted to dismiss public defender James Kuehl and have another attorney appointed because Kuehl had not consulted with him and had not prepared a defense on his behalf. Kuehl had taken the case from another public defender who was going to be out of town the week of the trial.
 
 
 9
 Harvey told the court that he had told both attorneys about an alibi witness, Sam Mann, who would testify that he had been with Harvey at the time the burglary was committed. Kuehl admitted he had not contacted Mann, but stated that he and the other public defender had decided that Mann would be of no help to Harvey's defense.
 
 
 10
 The court granted Harvey a continuance of 15 to 20 minutes to discuss the case with his attorney. The court did not appoint Harvey new counsel, but stated that Harvey could either retain new counsel or represent himself. Kuehl continued to represent Harvey at trial and on post-trial motions.
 
 
 11
 Harvey not only raised the ineffective assistance/failure to interview claim just before trial, but also at the post-trial hearing and on his appeal to the Illinois Appellate Court. Harvey, however, did not raise the issue on his petition for leave to appeal to the Illinois Supreme Court. Instead, Harvey presented two claims to the Illinois Supreme Court: (1) error in selecting a replacement juror in violation of an Illinois Statute,[1] and (2) ineffectiveness at the post-trial hearing for failure to appoint new counsel to argue ineffectiveness for failure to interview the alibi witness.
 
 
 12
 The ineffective assistance/post-trial claim that Harvey raised in the Illinois Supreme Court is somewhat related to the petitioner's ineffective assistance/failure to interview claim. After reviewing the petitioner's brief to the Illinois Supreme Court, however, the court cannot conclude that the ineffective assistance/failure to interview claim was fairly presented to the Illinois Supreme Court. The brief to the Illinois Supreme Court discussed whether state law requires new counsel to be appointed for a post-trial motion hearing where the defendant alleges ineffective assistance of counsel. The brief does not once cite Strickland v. Washington, 466 U.S. 668 (1984), the leading case on ineffective assistance of counsel. The brief does not analyze trial counsel's failure to interview an alibi witness in terms of trial strategy or tactics. And the brief does not discuss the existence of prejudice resulting from the allegedly ineffective assistance of counsel.
 
 
 13
 In Nutall v. Greer, 764 F.2d 462 (7th Cir.1985), the court held that failure to seek review in the state's highest court, having taken one appeal to the state's lower level appellate court, constitutes a waiver of the petitioner's right to a writ of habeas corpus. Where a petitioner by his own default is no longer permitted to seek review in the state's highest court under the state's rules, a petitioner shall be "deemed to have waived his right to habeas corpus on grounds that he might have presented but did not present to the highest court". Nutall, 764 F.2d at 464.
 
 
 14
 Nutall was a situation where the petitioner did not even seek leave to appeal. Here, the petitioner did seek leave to appeal, but he did not present grounds to the state's highest court that he could have. It is now too late for the petitioner to present new grounds in a petition for leave to appeal to the Illinois Supreme Court. Ill.Rev.Stat. ch. 110A, § 315(b) (petition for leave to appeal must be filed within 21 days of the Illinois Appellate Court's judgment). The court finds that the petitioner's first claim for relief is procedurally barred. See also Bonner v. DeRobertis, 798 F.2d 1062, 1065-66 (7th Cir.1986).
 
 
 15
 Harvey's second ground for relief is that he was denied the effective assistance of counsel when the trial court denied him counsel of his choice during post-trial proceedings. Harvey argues that his counsel had to labor under a conflict of interest, which included arguing his own incompetence before the trial court.
 
 
 16
 The Supreme Court has recognized that a lawyer forced to represent codefendants at trial whose interests conflict cannot provide the adequate legal assistance required by the Sixth Amendment. Cuyler v. Sullivan, 446 U.S. 335, 345 (1980). The alleged conflict of interest in the present case, however, is manifestly different.
 
 
 17
 Here, Harvey's trial counsel, James Kuehl, did not represent anyone else at trial. Harvey was the sole defendant. Kuehl also represented Harvey at the post-trial motion and sentencing hearing. Kuehl had brought a motion for a new trial which contended that the trial court erred by not allowing Harvey's pro se motion at trial for a continuance and appointment of new counsel.
 
 
 18
 At the post-trial hearing, Kuehl did not vigorously press the ineffective assistance issue:
 
 
 19
 Actually the next two [paragraphs of the post-trial motion] go together. I am making this point on behalf of Mr. Harvey. He made a pro se motion for alternate counsel, other than someone from the Public Defender's Office, and he gave the reasons at that time. I don't know what my standing is to make an argument, but we wanted to preserve the issue, and so we made the argument on behalf of Mr. Harvey.
 
 
 20
 Transcript at 116. Kuehl did preserve the matter for appeal, and the Office of the State Appellate Defender presented the issue to the Illinois Appellate Court.
 
 
 21
 Strickland establishes a two prong test for ineffective assistance of counsel. First, the defendant must show that the counsel's performance was deficient. Second, the defendant must show that the deficient performance prejudiced the defense. Id. at 687.
 
 
 22
 Even if counsel's performance here was deficient,[2] the defendant has not shown how the performance prejudiced him. The petitioner had already been found guilty by a jury. Motions for a new trial are not commonly granted, so the effect of Kuehl's argument during the post-trial motion hearing was not likely to have affected the outcome. Most important, Kuehl preserved the issue for appellate review. The court concludes that Harvey's second ground for relief is without merit.
 
 
 23
 Finally, the petitioner contends that the evidence was insufficient to support the jury's finding that he was guilty of burglary beyond a reasonable doubt. While the petitioner did not raise the issue when he sought leave to appeal, the state does not argue that the issue was procedurally barred, and the court will consider the claim. See Bonner, 798 F.2d at 1066 (state's failure to argue procedural default waives that defense and permits district or appellate court to address the merits of a habeas claim).
 
 
 24
 In determining whether the evidence supported a finding of guilt beyond a reasonable doubt, a federal court reviewing a state conviction on habeas review must view the evidence "in the light most favorable to the prosecution" and then decide whether "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt". Jackson v. Virginia, 443 U.S. 307, 319 (1979).
 
 
 25
 The following evidence was adduced at trial: At 1:30 A.M., on September 1, 1986, Calvin Winston testified he was staying at his cousin's house in Champaign when he heard glass breaking. Looking out the window across the street at the American Legion building, he saw a black man breaking the window of the building. His cousin called the police. Winston did not identify the defendant as the person he had seen.
 
 
 26
 Champaign Police Officer Ronald Seeley testified that he was dispatched to the American Legion building on September 1, 1986, at approximately 1:34 A.M. From a distance of about 30 feet, he shined a spotlight through the broken window and fixed it on a black man inside the building. Seeley stated that the area was fairly well lit on the street, although he could not remember if there was light inside the building. He got out of his squad car and walked toward the exit door of the building. When a man ran out the exit door and west through the parking lot to Fifth Street, Seeley followed him.
 
 
 27
 Seeley chased the man north on Fifth Street to Washington Street. He was about 30 feet behind the person, but lost ground until he was about 20 yards behind the man. The man turned east onto Washington Street, and, at about 510 East Washington, he ran between two houses and into a backyard, at which point Seeley lost sight of him. Seeley states that all told he lost sight of the defendant for perhaps 10 seconds at the most. When the suspect ducked between yards, Seeley heard the clanging of someone jumping a fence and then heard Officer Spires yell that the person had been apprehended at 507 East Columbia, a yard kitty-corner across the alley from 510 Washington Street. Seeley states that he did not see any other people on the streets during this chase, nor any other foot traffic. Seeley stated that he did not recall the suspect looking back at him during the chase, inferring that he did not get a full view of the person's face.
 
 
 28
 Several other police officers were dispatched to the area during the chase. Police Officer Holly Nearing was dispatched to the vicinity of the American Legion building and testified that she drove to the 500 block of Washington Street when she learned there was a foot chase going on. Officer Seeley stopped Nearing and told her that the person had cut through backyards and an alley. Nearing drove to Sixth and Washington, traveled north on Sixth to Columbia, and then drove east on Columbia. As she drove east on Columbia, she shined her spotlight south between the houses.
 
 
 29
 When Nearing got to the area between 505 and 507 East Columbia, she stated that she saw a black man, who was not wearing a shirt, coming north toward her moving car. Nearing shined the spotlight on the man from a distance of about 60 feet. He jumped a fence and ran behind a house located at 507 East Columbia. Nearing left her squad car and walked behind the house. Officers had the man (Harvey) in custody.
 
 
 30
 Nearing identified Harvey in court as the man she saw from her squad car, although there was a discrepancy in the height she gave of the suspect. Harvey is approximately 5'7" tall, and, from her squad car, Nearing stated that the person she saw between the yards was closer to 6' tall. Nearing then went through the yards at 505 and 507 East Columbia where she found a plastic file box on the hood of a car parked in the driveway at 507 East Columbia. The box contained a hole on the top with a note, "$.25 phone calls," which contained $7.80. She did not find any articles of clothing in the yards.
 
 
 31
 Officer Jim Spires apprehended the defendant. Spires testified that he joined the foot chase of the suspect by running north on Sixth Street, paralleling a man he saw running north on Fifth Street. At the corner of Fifth and Washington, he saw the man begin to run on Washington toward Spires, then cut between two houses. Spires ran further north on Sixth Street to an alley where he heard and saw a man leap a fence, cross the alley, and go into a backyard on Columbia Street. Spires ran toward the man and saw him standing between a garage and a car on Columbia. He yelled at the man to stop, pulled his revolver out, threw him to the ground, and arrested him. Spires stated that the man had a purple Crown Royal bag in his hand. The man arrested was Harvey.
 
 
 32
 The defense emphasized that there were ten seconds between the time that Seeley lost sight of the man running out of the American Legion building and the time that Spires apprehended Harvey in the backyard on Columbia Street. The defense stated that it was a case of the wrong person being in the wrong place at the wrong time, and Mr. Harvey, at pre-trial, stated that his alibi witness would account for his whereabouts during the time of the robbery. The defense also stressed that that the man seen running through the neighborhood was not wearing a shirt and the property report from the jail stated that Harvey had a gray T-shirt or sweatshirt-type top on. Moreover, the defense emphasized, the plastic box was not on Harvey's person when he was arrested.
 
 
 33
 Bobby Reed testified that he was the Commander of the American Legion Post and that, on September 1, the silent alarm, which was activated by movement inside the building, went off. Reed identified the plastic file box as belonging to the Legion building. He stated that he never gave anyone permission to break into the American Legion building.
 
 
 34
 Police Officer Mark Medlin testified on behalf of Harvey. He had interviewed Juan Brown and Calvin Winston as part of the investigation of the burglary. Medlin wrote in his police report that Brown and Winston looked out of their window and saw a black man wearing a yellow shirt and jeans enter the building. This information came from Brown and not Winston (the latter testified at trial).
 
 
 35
 While there may be conflicting inferences from the evidence, the reviewing court must presume that the trier of fact resolved such conflicts in favor of the prosecution, and defer to that resolution. Jackson, 443 U.S. at 326. This court concludes that a rational trier of fact could have found that Harvey committed the burglary. The police gave chase to an individual who ran out of the building that was burglarized. Harvey was apprehended panting heavily at 1:45 a.m. in a yard where a number of witnesses saw a person dash. Although there was a 10 second gap in the chase, the police testified that the streets were empty. The court denies Harvey's third ground for relief.
 
 
 36
 IT IS THEREFORE ORDERED THAT the petitioner's petition for a writ of habeas corpus is denied.
 
 
 37
 /s/HAROLD A. BAKER
 
 CHIEF UNITED STATES DISTRICT JUDGE
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Cir.R. 34(f). No such statement having been filed, the appeal has been submitted on the briefs
 
 
 [2]
 Pursuant to Fed.R.App.P. 43(c)(1), Roland Burris has been substituted for Neil Hartigan
 
 
 [3]
 On April 18, 1991, this court denied Harvey's motion for appointment of counsel. In his brief, he asks us to reconsider this decision. Because of our disposition of this case, we decline to do so
 
 
 [1]
 The court has already determined that this does not raise a cognizable constitutional claim. See docket # 6
 
 
 [2]
 Strickland sets forth a highly deferential standard of review for determining whether counsel was ineffective. 466 U.S. at 689. This court is not saying that Kuehl was ineffective during the postconviction proceeding. At trial, Kuehl would have been able to observe the trial judge's response to the petitioner's pro se motion. Kuehl may have decided to concentrate on arguments he felt had a better chance of succeeding with the judge