998 F.2d 1017
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Wayne G. WORTHINGTON, Defendant-Appellant.
 No. 92 CR 93.
 United States Court of Appeals, Seventh Circuit.
 Submitted July 9, 1993.
Decided July 15, 1993.[1]
 
 Before BAUER, Chief Judge, and CUDAHY and KANNE, Circuit Judges.
 
 ORDER
 
 1
 A jury found Wayne G. Worthington guilty of armed bank robbery (18 U.S.C. § 2113(a), (d)), and use of a firearm to commit a crime of violence (18 U.S.C. § 924(c)). Worthington was sentenced to a term of 78 months' imprisonment on the bank robbery, and 60 months' imprisonment on the firearms charge, the sentences to run consecutively. Worthington appeals from the conviction on the basis that the government failed to prove him guilty beyond a reasonable doubt.
 
 Background
 
 2
 At trial, Lynn Roelke testified that on March 19, 1992, she was working alone at a credit union in Wauwatosa, Wisconsin. At 11 a.m., a man telephoned, stating he wished to open an account and cash a check during his lunch hour. (Later, records showed that a telephone call had been made from the apartment of Worthington's brother, who lived in the same building as defendant, to the credit union at this time.) Roelke had been warned by the police of various robberies of financial institutions in the area. Roelke stated to a postal worker, Judy Stankiewicz, that something about the telephone call made her nervous. Stankiewicz agreed to keep a sharp eye on the credit union while she completed her route.
 
 
 3
 At about noon, two men entered the credit union. One man identified himself as Thomas Harris, stated that he had telephoned earlier, and asked to open an account. The other man was later identified as defendant. While preparing papers for the new account, Roelke observed through the window that a green Ford Fairmont with a trailer hitch was parked across the street. (She later identified defendant's car as the same car.) In opening the new account, Harris gave Roelke a non-existent address, was unsure of his zip code, and gave an incomplete social security number. At one point, defendant came around the counter, drew a gun, announced a holdup, and held the gun to Roelke's head. Roelke was told to lie on the floor, and later she was told to remove her glasses. At one point, a customer entered, and he was also told to lie on the floor.
 
 
 4
 After the two men took the money from the credit union safe, they locked Roelke and the customer in a closet, and then left the credit union building. Outside, Stankiewicz noticed them entering the green car, and she recorded the license plate number because she had previously watched the car driving slowly up and down the street in front of the credit union. Two blocks away, a police officer stopped Stankiewicz and she described the car and license plate number. Later that day, the police arrested defendant at his place of employment, just after he changed the license plates on the green car.
 
 
 5
 On the day of the robbery, Roelke and the bank customer were unable to identify Harris from a photo array, instead picking another person who was incarcerated at the time. On the day after the robbery, Roelke identified defendant in a line-up. She had thought that only defendant's companion had any facial hair, although defendant apparently had a mustache on the day of the robbery.
 
 
 6
 Defendant testified that at noon he drove his brother and a friend to an address they gave him. He waited in the car, unaware of any robbery. Worthington's brother and friend returned to the car, he drove them elsewhere, had lunch, and returned to work. Worthington testified further that the reason he was changing the license plates was because he had received a message that the police might be looking for him in connection with a robbery, and he wanted to get home and find out what was going on before the police found him. Defendant's girlfriend gave inconsistent testimony about defendant's whereabouts at the time of the robbery.
 
 Discussion
 
 7
 Defendant contends that there was insufficient evidence to convict him because of inconsistencies in the eyewitness testimony. Defendant argues that Roelke concentrated more on Harris, since he was the man opening an account; she removed her glasses; she thought the man with the gun was clean shaven; and she could not pick Harris out of a photo array.
 
 
 8
 We cannot overturn a conviction unless we find that, viewing the evidence in the light most favorable to the prosecution, no rational trier of fact could find defendant guilty beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 319 (1979). Our review of identification testimony is limited. The ultimate accuracy of the identification is for the jury. We determine only whether the identification evidence was so unreliable that it should not have reached the jury. United States ex rel. Kosik v. Napoli, 814 F.2d 1151, 1156 (7th Cir.1987). In examining the five factors which are relevant in determining whether the identification testimony is reliable ( see Neil v. Biggers, 409 U.S. 188, 199-200 (1972); United States v. Donaldson, 978 F.2d 381, 385 (7th Cir.1992)), we find that the jury could reasonably find that Roelke's eyewitness identification testimony was reliable.
 
 
 9
 First, Roelke had a significant opportunity to observe defendant, who stood in front of Roelke long enough for her to open a new account for Harris. The entire incident lasted 15 to 20 minutes. See United States v. Clark, 989 F.2d 1490 (7th Cir.1993) (two minute observation of bank robber was sufficient where robbery occurred during daylight hours and employees identifying robber were near him). Defendant argues that Roelke's opportunity was limited because she was told to lie on the floor and was later told to remove her glasses. Roelke, however, had already observed defendant for a significant length of time in a well-lighted area.
 
 
 10
 Second, Roelke's degree of attention was greatly heightened by the fact that she had already been alerted to a possible robbery by the police, by the unusual telephone inquiry she received shortly before defendant and Harris arrived; and by her earlier discussion with Stankiewicz. Roelke's attention became further focused on defendant because it was defendant who announced the robbery, and came around the counter towards Roelke with a gun drawn, and then held the gun to her head. In addition, her attentiveness was heightened because she was alone with defendant and Harris in the credit union. See Walton v. Lane, 852 F.2d 268, 274 (7th Cir.1988).
 
 
 11
 Third, Roelke's description of defendant was largely accurate. Defendant points out that Roelke failed to notice defendant's moustache. This was a minor discrepancy in view of the other factors which bolstered the reliability of the identification. See, e.g., United States ex rel. Bonner v. DeRobertis, 798 F.2d 1062, 1066 n. 5 (7th Cir.1986) (identification reliable notwithstanding victim's failure to notice moustache); United States v. Davies, 768 F.2d 893, 903 (7th Cir.), cert. denied, 474 U.S. 1008 (1985) (reliability of identification properly left to jury notwithstanding witness's description of moustache while defendant was clean shaven); United States v. Barksdale, 585 F.2d 288, 293-94 (7th Cir.1978), cert. denied, 441 U.S. 962 (1979) (reliability of identification was question for jury notwithstanding victim's description of man as clean-shaven with short-cropped hair while defense witnesses testified that defendant had a long Afro haircut and a moustache).
 
 
 12
 Fourth, Roelke expressed an unwavering level of certainty when she identified defendant. At the line-up she immediately identified defendant, was told to carefully view each man, and again insisted she was certain. At trial, Roelke testified that she was "100% certain" of her identification. Defendant argues that Roelke's identification of him is somehow undercut by the fact that she was unable to identify Harris in a photo array. Roelke's inability to identify Harris is hardly relevant to her ability to identify defendant. See United States v. Clark (fact that three eyewitnesses could not identify defendant as the bank robber casts no doubt on the reliability and certainty of the three eyewitnesses who positively identified defendant); Bonner, 798 F.2d at 1066 (identification of defendant was reliable, notwithstanding the victim's failure to pick out defendant's photo in a photo array, and failure to recognize him in the first line-up).
 
 
 13
 Finally, the length of time between the crime and Roelke's identification of defendant was brief. The morning after the bank robbery, she identified defendant in a line-up.
 
 
 14
 We also note that the eyewitness testimony was corroborated by other evidence. His car was parked outside of the credit union during the robbery; he changed his license plates after he left the credit union; and he was unable to offer credible evidence to explain his absence from work.
 
 
 15
 We cannot hold, based on the overwhelming strength of the evidence, that no reasonable jury could find beyond a reasonable doubt that defendant committed the bank robbery. Accordingly, the judgment of the district court is AFFIRMED.
 
 
 
 [1]
 After preliminary examination of the briefs, the court notified the parties that it had tentatively concluded that oral argument would not be helpful to the court in this case. The notice provided that any party might file a "Statement as to Need of Oral Argument." See Fed.R.App.P. 34(a); Circuit Rule 34(f). No such statement having been filed, the appeal has been submitted on the briefs and record