# In the
# United States Court of Appeals
## For the Seventh Circuit

_____

No. 03-4147

NEFTALY RODRIGUEZ,

*Petitioner-Appellee,*

v.

NEDRA CHANDLER, Warden,
Dixon Correctional Center,

*Respondent-Appellant.*

_____

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 02 C 2184—**Harry D. Leinenweber**, *Judge.*

_____

ARGUED MAY 25, 2004—DECIDED AUGUST 27, 2004

_____


Before EASTERBROOK, DIANE P. WOOD, and WILLIAMS,
*Circuit Judges.*

EASTERBROOK, *Circuit Judge.* Several months prior to
Neftaly Rodriguez's trial for murder, the prosecutor filed a
motion to disqualify Joseph Brent as one of his lawyers.
Brent also represented detective John McMurray in an
unrelated real estate deal. The prosecutor told the judge
that McMurray was an "integral part of the case" against
Rodriguez because he had participated in the investigation
of one of Rodriguez's co-defendants. According to the pros-

ecutor, Brent's simultaneous representation of Rodriguez and McMurray created a "per se conflict of interest". The thinking was not spelled out but must have been that, if McMurray appeared on the stand, Brent would treat him with kid gloves during cross-examination, lest he risk upsetting and losing a paying client. Relying on the prosecutorial assurance that McMurray would testify, the judge held that a conflict existed and deemed inadequate Rodriguez's offer to waive his right to conflict-free counsel. The court prevented Brent from rendering Rodriguez any further assistance. When trial arrived, however, the prosecutor failed to call McMurray as a witness. Rodriguez was convicted and on appeal argued that Brent had been disqualified improperly. The Appellate Court of Illinois rejected this contention, *People v. Rodriguez*, 317 Ill. App. 3d 1159 (1st Dist. 2000) (unpublished order), finding that the trial court had only unpalatable choices—if it disqualified Brent, Rodriguez might protest that his right to choice of counsel had been violated; but if it accepted Rodriguez's waiver, he might disavow it on appeal and assert ineffective assistance of counsel. The Appellate Court found that the trial judge did not err in choosing the former course.

Rodriguez has petitioned for a writ of habeas corpus. 28 U.S.C. §2254. A state court's decision may be upset on collateral review only if its decision is contrary to, or an unreasonable application of, law clearly established by the Supreme Court. 28 U.S.C. §2254(d). Rodriguez does not contend that the state court's decision contradicts settled law. The Appellate Court recognized, citing *Wheat v. United States*, 486 U.S. 153 (1988), that a constitutionally founded presumption in favor of a defendant's choice of counsel can be overcome only by a serious potential for conflict. But the district court held that it was unreasonable for the state tribunal to conclude that such a potential had been demonstrated, given the low likelihood that McMurray had material evidence to give against Rodriguez. 2003 U.S. Dist.

LEXIS 21251 (N.D. Ill. Nov. 24, 2003). The district court issued the writ, and Illinois appeals.

Disqualification stemmed from the prosecutor's assurance that McMurray was a vital witness. But McMurray did not testify, and on collateral review Illinois does not argue that McMurray could have provided *any* admissible evidence against Rodriguez. The prosecutor has never explained this about-face, nor did the state's appellate court try to make sense of it. All the prosecutor could manage in the state proceedings was to argue that Rodriguez had not shown that McMurray was certain not to testify. We grant the (implied) point that decisions must be made *ex ante*; if disqualification was proper on the basis of all information known or knowable at the time the judge acted, then later developments (such as a severance that allowed the prosecutor to withhold McMurray as a witness against Rodriguez, while using him against other defendants) would not spoil the decision. This differs, however, from an argument that Rodriguez bore the burden of production and persuasion. How could he have known the details of the prosecution's strategy? Under *Wheat* the risk of non-persuasion rests with the prosecution rather than the defendant. The state's appellate court may have shared the prosecutor's error; certainly its opinion does not disclaim it or otherwise evaluate the prosecutor's failure to put McMurray on the stand, which pulled the rug out from under the trial court's decision.

The state's line of argument is further embarrassed by the fact that McMurray did not testify at the co-defendant's trial either. In this court Illinois suggests that, if severance had not occurred, McMurray might have testified at a joint trial, for his investigation indicated that the co-defendant had no alibi and likely was at the scene of the murder. But then why didn't McMurray testify at the other trial? And why, if this were the limit of McMurray's testimony, would Brent have been inclined to cross-examine McMurray at a joint trial? It was known before the disqualification that

Rodriguez and his co-defendant had made statements blaming one another for the murder (this is why their trials were severed). McMurray's testimony about the co-defendant's alibi either would have exculpated Rodriguez or been neutral toward him. So the state's explanation for disqualifying Brent doesn't hang together. While Rodriguez does not accuse the prosecutor of acting in bad faith, that is not an element of the constitutional theory.

Cinching a conclusion that the state court's decision is unreasonable is that there never was much chance (viewed objectively) that Brent would be placed in a conflicted or compromised position. That is so even if McMurray was likely to testify. Rodriguez had two lawyers and offered to have Brent's co-counsel conduct any cross-examination of McMurray. Illinois does not contend that Brent learned from McMurray privileged information that he could have passed on to co-counsel (if there had been such privileged information, *both* of Rodriguez's attorneys would have been disqualified). Having co-counsel cross-examine McMurray would have eliminated all risks; and this easy solution (which the state judiciary ignored) makes it unreasonable for the state to have denied Rodriguez the benefit of Brent's services. A state court can be erroneous without being "unreasonable." See *Yarborough v. Alvarado*, 124 S. Ct. 2140 (2004); *Price v. Vincent*, 538 U.S. 634, 641-43 (2003). Yet a decision that not only rests on mistaken premises but also makes no sense even if those premises had been true must be called unreasonable.

Illinois contends that any error is harmless. Rodriguez enjoyed the services of one attorney of his own choosing even after Brent departed, and he does not contend that his trial counsel's performance at trial was deficient in any respect, let alone constitutionally ineffective. See *Strickland v. Washington*, 466 U.S. 668 (1984). Our analysis of this issue is not affected by 28 U.S.C. §2254(d), because the state's appellate court did not address whether any error was

harmless. Nor does *Teague v. Lane*, 489 U.S. 288 (1989), come into play. *Teague* ensures that judgments are not spoiled by constitutional rules of criminal procedure established or materially changed after a conviction becomes final. The key word is "procedure". See *Schriro v. Summerlin*, 124 S. Ct. 2519 (2004); *Bousley v. United States*, 523 U.S. 614 (1998). *Teague* controls the application on collateral review of new rules governing the conduct of police, prosecutors, or courts preceding the verdict and sentence—that is, the primary conduct under review in the collateral attack—but not the standards by which the federal court conducts its own review. We therefore decide whether the error was harmless using currently applicable federal rules.

The Supreme Court has never decided whether prejudice is a prerequisite to reversal of a judgment following erroneous disqualification of counsel. In *Flanagan v. United States*, 465 U.S. 259 (1984), the Court stated that an erroneous disqualification could support reversal on appeal following a conviction, see 465 U.S. at 268-69, and some courts have understood this to imply that harmless-error analysis would not be employed—though the Court did not say that (the word "harmless" does not appear in the decision), and all that *Flannigan* establishes is that there would be appellate *jurisdiction* to consider the issue after conviction and sentence (though there is none before the final decision). The Court has since observed that whether erroneous disqualifications may be treated as harmless is an open question. See *Richardson-Merrell, Inc. v. Koller*, 472 U.S. 424, 438 (1985). We have struggled with the issue in both criminal and civil litigation. See *United States v. Santos*, 201 F.3d 953 (7th Cir. 2000); *In re Lewis*, 212 F.3d 980 (7th Cir. 2000); *United States v. Turk*, 870 F.2d 1304 (7th Cir. 1989). *Turk* suggests (but does not hold) that proof of prejudice is required. (The decision in *Turk* rested on the finding that the district court did not abuse its discretion in denying the defendant's request for a continuance to obtain

a new attorney.) *Santos* added, see 201 F.3d at 960, that it is difficult to show prejudice (especially when one counsel of choice remains) without also showing ineffective assistance, in which event the propriety of the disqualification is irrelevant. But it does not follow, and *Santos* did not hold, that reversal is automatic. Many procedural errors (constitutional, statutory, and regulatory) may be non-prejudicial, and it would make little sense to say that the less harm a mistake causes the more readily the appellate court must set aside the judgment. See, e.g., *United States v. Patterson*, 215 F.3d 776, 778-82 (7th Cir. 2000), remanded in part on unrelated grounds, 531 U.S. 1033 (2000), after remand, 241 F.3d 912 (2001) (the difficulty of showing prejudice from an error that forces the defendant to use a peremptory challenge does not justify automatic reversal).

The norm in cases on collateral review is that the petitioner must show that the error had a substantial and injurious effect on the outcome. See *Brecht v. Abrahamson,* 507 U.S. 619 (1993). As long as a defendant has counsel and is tried before an impartial judge or jury, most blunders are assessed to see whether their effect injures the defense. *Neder v. United States*, 527 U.S. 1 (1999). Defendants denied all assistance of counsel need not show that the denial affected the verdict. See *Bell v. Cone*, 535 U.S. 685 (2002); *United States v. Cronic*, 466 U.S. 648 (1984). Prejudice in these situations is so likely that case-by-case inquiry is unnecessary. See *Arizona v. Fulminante*, 499 U.S. 279 (1991). But shortcomings in counsel's performance justify relief only if the deficiencies were prejudicial. See *Mickens v. Taylor*, 535 U.S. 162 (2002); *Strickland v. Washington*, 466 U.S. 668 (1984); *Morris v. Slappy*, 461 U.S. 1 (1983).

It is hard to see why violations of the qualified right to counsel of choice should lead to automatic reversal, when deprivation of the absolute right to a competent attorney leads to relief only if prejudice is demonstrable. An attorney is vital to a reliable trial. A competent attorney is less

so—one must show that, but for counsel's bungling, the outcome likely would have differed. Having one's preferred attorney is icing on the cake. A defendant with an inept attorney is in a more precarious position than one with a competent lawyer who is the defendant's second or third choice. A rule of automatic reversal when the defendant does not get his first-choice lawyer, but requiring proof of prejudice when the defendant does not get even a competent lawyer, would not make sense—particularly in cases such as this where the defendant goes to trial with another lawyer of his own choice. We are aware that several circuits have held that the denial of the right to choice of counsel never may be deemed harmless. See *United States v. Panzardi Alvarez*, 816 F.2d 813 (1st Cir. 1987); *United States v. Voigt*, 89 F.3d 1050 (3d Cir. 1996); *Wilson v. Mintzes*, 761 F.2d 275 (6th Cir. 1985); *Bland v. California*, 20 F.3d 1469 (9th Cir. 1994), overruled on other grounds by *Schell v. Witek*, 218 F.3d 1017 (9th Cir. 2000). Contra, *United States v. Mendoza-Salgado*, 964 F.2d 993 (10th Cir. 1992) (prejudice required unless trial court acted "unreasonably or arbitrarily" in disqualifying counsel). But most of these decisions rely on *Flanagan* without discussing its limits (or the observation in *Richardson-Merrell*), and all of them precede *Neder* and *Mickens*. Cases like Rodriguez's, where the defendant is represented at trial by at least one lawyer of his own choosing, are especially poor candidates for automatic reversal.

This leaves unanswered the question posed in *Santos*— how can a defendant prove prejudice when his substitute counsel provided constitutionally adequate assistance? Maybe the answer is that, when the defendant cannot prove prejudice, the judgment always stands. So the Supreme Court has held even when the right at issue affects the assistance of counsel. *United States v. Morrison*, 449 U.S. 361 (1981), rejected the proposition that all interference with attorney-client relations (in *Morrison*, meeting with a suspect while

counsel was absent and disparaging the lawyer in an effort to undermine the client's confidence) automatically spoiled the prosecution.

Some kind of effect must be shown. But *what* kind? Losing the services of one's preferred lawyer can be similar to receiving the services of a lawyer with a concealed conflict: in either situation trial counsel may well do just fine, but there may be hard-to-uncover shortcomings. The Supreme Court resolved the difficulties facing defendants represented by a conflicted attorney by holding that relief is possible if the conflict "adversely affects" counsel's performance at trial. See *Mickens*, 535 U.S. at 170-72 & n. 5; *Cuyler v. Sullivan*, 446 U.S. 335 (1980). Adverse effect might be shown if, for example, counsel failed to pursue a reasonable alternative defense strategy. See *Rubin v. Gee*, 292 F.3d 396 (4th Cir. 2002); *McFarland v. Yukins*, 356 F.3d 688 (6th Cir. 2004).

The adverse-effect standard lies midway between automatic reversal and requiring proof of a likely difference in the litigation's outcome. Until the Supreme Court settles the question it left open in *Richardson-Merrell*, this middle ground seems the closest match to situations in which the court wrongly strips the defendant of his preferred lawyer. Adverse effect in this situation means an identifiable difference in the quality of representation between the disqualified counsel and the attorney who represents the defendant at trial. The difference does not have to be great enough to undermine confidence in the outcome—that is the standard under *Strickland*, see 466 U.S. at 694; *Woodford v. Visciotti*, 537 U.S. 19, 23-24 (2003)—but it must be enough to show that the defendant's representation suffered a setback from the disqualification.

Has Rodriguez shown an adverse effect? This might be done if Brent had expertise that his other lawyer lacked, or if Brent had planned a line of defense that co-counsel was

unable to sustain on his own. So far, however, the record is silent. Brent has not filed an affidavit detailing what he would have done differently had he conducted the trial or how the defense otherwise might have been affected by his absence. It is hard to blame Rodriguez for this. Illinois argued for application of the prejudice standard from ineffective-assistance cases, which would have the practical effect of eliminating relief in all cases when the defendant loses his preferred lawyer, and thus of making *Wheat* a dead letter. Rodriguez argued for automatic reversal, the opposite extreme. Now that we have settled on a middle ground, both sides should have an opportunity to produce evidence and craft arguments bearing on the applicable standard. See 28 U.S.C. §2106. Accordingly, the judgment of the district court is vacated, and the case is remanded for proceedings consistent with this opinion.

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*