In the

# United States Court of Appeals

## For the Seventh Circuit

No. 08-2350

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

ROOSEVELT TURNER,

*Defendant-Appellant.*

Appeal from the United States District Court
for the Southern District of Illinois.
No. 3:05-cr-30015—**David R. Herndon**, *Chief Judge.*

ARGUED JANUARY 20, 2009—DECIDED FEBRUARY 2, 2010

Before EASTERBROOK, *Chief Judge,* SYKES, *Circuit Judge,* and KENDALL, *District Judge.*\*

SYKES, *Circuit Judge.* The district court disqualified Roosevelt Turner's retained counsel from representing him in this cocaine-conspiracy case because the attorney

---

\* The Honorable Virginia M. Kendall, District Judge for the United States District Court, Northern District of Illinois, sitting by designation.

was also representing an alleged coconspirator in sentencing proceedings. The question for us is whether this violated Turner's Sixth Amendment right to counsel of his choice.

In February 2005 the government indicted Turner and eight others for conspiring to distribute cocaine in Alton, Illinois. But Turner was not arrested until June 2006, and by that time many of the alleged coconspirators had pleaded guilty and cooperated with the government. One exception was Anthony Womack. His first trial ended in a hung jury. On retrial Womack was convicted, and he was awaiting sentencing when the authorities finally caught up with Turner. In the meantime, Womack hired a new attorney—Irl Baris—to represent him at sentencing. Once in custody, Turner was initially represented by appointed counsel, but his family soon hired Baris as his attorney. The government questioned whether this joint representation was permissible and asked the court for a hearing on the matter.

The government suggested that Baris's representation of both defendants presented an insurmountable conflict of interest because one might decide to cooperate with the government against the other. Baris countered that there was no actual conflict—nor any serious potential for conflict—because neither client wanted to assist the government and prosecutors had not shown the slightest interest in securing either defendant's testimony against the other. Moreover, both defendants waived any conflict of interest. The district judge focused on the *possibility* that one defendant might provide information

or testimony against the other and held that this was sufficient to create an "absolute" conflict of interest. On this basis the judge disqualified Baris as Turner's counsel. A jury convicted Turner of conspiracy, and he appealed, challenging the judge's disqualification of his chosen counsel.

We reverse. The Sixth Amendment gives a defendant who does not require appointed counsel the right to choose who will represent him. *See Wheat v. United States*, 486 U.S. 153, 159, 164 (1988). The Supreme Court recognizes a presumption in favor of the defendant's choice, although this presumption may be overridden if there is an actual conflict of interest or a "serious potential for conflict." *Id*. at 164. Where there is an actual or serious potential conflict, two aspects of the Sixth Amendment right to counsel are in tension: the accused's right to counsel of his choice and his right to the effective assistance of counsel. *Id.* at 159-61. Joint representation is not, however, a per se violation of the right to the effective assistance of counsel. *Id.* at 160-61.

Here, the district court disqualified Baris based on the *possibility* that Womack might cooperate against Turner or vice versa. But this possibility for conflict is present in nearly every case of joint representation. The district court's analysis disregarded the presumption in favor of the defendant's chosen counsel and imposed what amounts to a per se rule against joint representation. As such, the court's disqualification order was premised on a mistake of law and violated Turner's right to counsel of his choice. Because this violation is structural, *United*

*States v. Gonzalez-Lopez*, 548 U.S. 140, 150 (2006), Turner is entitled to a new trial.

## I. Background

In February 2005 a grand jury indicted Turner, Womack, and seven others on charges of conspiring to distribute cocaine in violation of 21 U.S.C. §§ 841(a)(1), 841(b)(1)(A)(ii), and 846. (A superseding indictment filed in October 2005 added three more defendants as coconspirators.) The government alleged that from January 2003 to January 2005, Turner and the others conspired to distribute large quantities of cocaine in and around Alton, Illinois. Most of the alleged conspirators were quickly rounded up. Turner, however, remained at large until June 2006.

Nearly all of the coconspirators pleaded guilty and cooperated with the government, but Womack elected to go to trial. The government's first attempt to convict Womack ended in a mistrial because the jury could not reach a verdict. On retrial in April 2006, the jury found Womack guilty. The case against him relied largely on the kind of evidence customarily introduced in drug-conspiracy trials: tapes of telephone intercepts capturing conversations among those associated with the charged conspiracy and the testimony of several of the cooperating coconspirators.

During both of his trials, Womack was represented by Attorney John Abell. After his conviction, however, Womack hired Attorney Irl Baris to represent him for

sentencing and appellate purposes. Baris is an experienced criminal-defense attorney in practice since 1948 and an adjunct professor of criminal trial practice and procedure at Washington University School of Law for the last 25 years. He has tried a variety of federal cases involving white-collar crimes, drug conspiracies, and racketeering offenses, and has argued numerous appeals in five or six federal circuits. He entered his appearance on behalf of Womack on June 1, 2006.

As Womack awaited sentencing, police finally arrested Turner on June 14, 2006. Court-appointed attorneys represented Turner for the next six weeks. Turner's family then hired Baris to represent him, and on August 1, 2006, Baris entered his appearance as Turner's counsel. The government immediately asked the district court to conduct a hearing under Rule 44(c) of the Federal Rules of Criminal Procedure to evaluate the effect of any potential conflict of interest on each defendant's right to the effective assistance of counsel. *See* FED. R. CRIM. P. 44(c) (outlining the court's duty of inquiry in a case of joint representation). The government's motion intimated that Womack might be called to testify at Turner's trial or might pursue sentencing or appellate strategies adverse to Turner's interests, or alternatively, Turner might be asked to provide information or testimony to assist the government at Womack's sentencing.

At the Rule 44(c) hearing, the government argued as a general matter that the defendants' interests might become adverse in the event that either opted to cooperate with the government. But the prosecutor was not more

specific. He did not say, for example, that the government intended or was likely to seek Womack's cooperation and testimony against Turner or vice versa. The prosecutor did say that "[a]s a side note, an attorney in my office has requested permission to talk to whoever [Womack's] attorney is to see if Mr. Womack is interested in cooperating with the Government with regard to a somewhat unrelated matter, certainly with regard to his narcotics distribution." The judge sought clarification: "[Y]ou said your line assistant has asked for permission to approach Womack with the possibility of giving testimony against Mr. Turner?" The prosecutor responded in the negative:

> That is not accurate, Your Honor. That would not be accurate. The line attorney who has asked me about Mr. Womack is seeking information with regard to individuals who purchased cocaine directly from Mr. Womack, not necessarily information with regard to Mr. Turner. Of course, the issue becomes one of, once an individual begins to cooperate, there can't be limitations on that.

The government did not explicitly ask the court to disqualify Baris. The gist of its argument, however, was that Baris's joint representation of Turner and Womack created an impermissible conflict of interest requiring his disqualification from Turner's case.

Baris argued that Turner was entitled under the Sixth Amendment to retain counsel of his choice. He explained that each client's family had separately retained him and that both Turner and Womack had consented after con-

sultation to the joint representation. He also said neither Turner nor Womack had any interest in assisting the government and noted that the government had not expressed any interest in seeking either defendant's cooperation against the other. Baris said both defendants were prepared to waive any conflict of interest. Baris invited the court to make a personal inquiry of the defendants to confirm their consent to the joint representation.

The judge did not respond to this invitation. Instead, the judge expressed his general concern that Baris could not effectively advise one of his clients about the advantages of cooperating with the government without hurting the interests of his other client. The judge had presided over Womack's trial and knew that the evidence there had suggested that Turner was Womack's sole cocaine supplier. "[B]ecause there was testimony in the Womack trial relative to Turner," the judge said, "Mr. Womack is a person with potential relevant knowledge who could be subpoenaed to testify in the Turner case. And how do you go about cross-examining your own client with any sort of vigor that properly represents your other client?" Baris reminded the court that the government could not compel Womack to testify. The judge countered: "And so then what does the record show, that the attorney for Turner advised the witness to take the Fifth Amendment?" Baris responded: "No. The attorney for Womack may advise him [to take the Fifth Amendment]."

On the flip side of the conflict question, the judge said that Turner might need advice from Baris if the

government sought his cooperation in Womack's sentencing, and "Mr. Baris is not going to be in a position to do that faithfully, fully, exercising his full professional responsibilities to his client because, of course, if he were representing Mr. Womack, he wouldn't want Mr. Turner to testify against Womack in a sentencing." Baris suggested that the court's concerns were based entirely on speculation. The attorney noted that under the Supreme Court's decisions in *Wheat* and *Gonzalez-Lopez*, it was the government's burden to establish an actual conflict of interest or at least a serious potential for conflict, and noted again that the prosecutor had not specifically said he intended to seek either defendant's cooperation against the other. The judge responded: "How much more specific does it have to get other than there will be an approach for a proffer, and he is clearly a—if not absolutely going to be a witness, he's clearly a person with extraordinarily relevant knowledge that likely will be a witness."

Perhaps sensing which way the wind was blowing, Baris suggested that the court accept Turner's conflict waiver now and revisit the matter later if the prosecution decided to approach either defendant about cooperating. "[L]et's suppose that they do [approach one of the defendants]," Baris said. "At that time the issues can be crystalized and perhaps the facts can be revealed as to what the conflict is. Here, we don't know." The judge rejected this alternative, concluding instead that the conflicts are "absolute" and "specific," "they're clear, they are not speculative," and "[t]here's no way that any waiver can overcome these conflicts." The court entered an order disqualifying Baris from representing Turner.

The government never sought either defendant's assistance against the other. Womack was sentenced to 151 months' imprisonment. With new counsel, Turner proceeded to a jury trial. He was convicted of conspiracy to distribute in excess of 5 kilograms of cocaine and sentenced to 360 months' imprisonment. He appealed, challenging the district court's disqualification of Baris as a violation of his Sixth Amendment right to retain counsel of his choice.

## II. Discussion

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence." U.S. CONST. amend. VI. Two aspects of this Sixth Amendment right are pertinent here: the right of an accused who does not require appointed counsel to choose the attorney who will represent him, *see Gonzalez-Lopez*, 548 U.S. at 144-48; *Wheat*, 486 U.S. at 159, and the right to effective assistance of counsel, *see Strickland v. Washington*, 466 U.S. 668, 687 (1984).

Each of these rights protects something different—the former secures "the right to a particular lawyer regardless of comparative effectiveness," and the latter prescribes "a baseline requirement of competence on whatever lawyer is chosen or appointed." *Gonzalez-Lopez*, 548 U.S. at 148. The rights are different in another respect: The Sixth Amendment's protection against ineffective representation "derive[s] from the . . . Amendment's purpose of ensuring a fair trial," *id.* at 147; "[t]he right to

select counsel of one's choice, by contrast, . . . has been regarded as the root meaning of the constitutional guarantee," *id.* at 147-48. Stated differently, the Sixth Amendment right to counsel of choice "commands[] not that a trial be fair, but that a particular guarantee of fairness be provided—to wit, that the accused be defended by the counsel he believes to be best." *Id.* at 146.

These two elements of the Sixth Amendment right to counsel will occasionally be in tension with each other—prototypically, when a defendant hires an attorney who has a conflict of interest. When this occurs, the defendant's right to counsel of his choice may have to give way. A court confronted with a case of joint representation "must take adequate steps to ascertain whether the conflicts warrant separate counsel." *Wheat*, 486 U.S. at 160. Joint representation may present a conflict so concrete and serious that it intolerably undermines the right to effective assistance of counsel and justifies overriding the defendant's choice of counsel. *Id.* at 161-62.

Not all cases of joint representation, however, give rise to a conflict of interest warranting disqualification of counsel; the Supreme Court has held that joint representation is not a per se violation of the right to effective counsel. *Id.* at 159-60. Instead, joint representation requires careful judicial scrutiny for the presence and effect of conflicts; the court "ha[s] an independent duty to ensure that criminal defendants receive a trial that is fair and does not contravene the Sixth Amendment." *Id.* at 161; *see also United States v. Combs*, 222 F.3d 353, 361 (7th Cir. 2000) ("[A] court has an independent duty to

balance the right to counsel of choice with the broader interests of judicial integrity.").

Where, as here, defendants charged jointly are represented by the same counsel, Rule 44(c)(2) of the Federal Rules of Criminal Procedure instructs the court to conduct a prompt inquiry into the likelihood and effect of any conflict of interest:

> **(2) Court's Responsibilities in Cases of Joint Representation.** The court must promptly inquire about the propriety of joint representation and must personally advise each defendant of the right to the effective assistance of counsel, including separate representation. Unless there is good cause to believe that no conflict of interest is likely to arise, the court must take appropriate measures to protect each defendant's right to counsel.

In joint-representation cases, the district court has "substantial latitude" to refuse a defendant's conflict waiver. *Wheat*, 486 U.S. at 163. The court's decision, therefore, is reviewed for abuse of discretion; we recognize, moreover, that the decision "must be made *ex ante*; if disqualification was proper on the basis of all information known or knowable at the time the judge acted, then later developments . . . would not spoil the decision." *Rodriguez v. Chandler*, 382 F.3d 670, 672 (7th Cir. 2004).

Although the disqualification decision is "left primarily to the informed judgment of the trial court," *Wheat*, 486 U.S. at 164, the force of the core constitutional command requires that the court start from a default posi-

tion that gives effect to the defendant's Sixth Amendment right to choose his own counsel. The Supreme Court has therefore recognized a presumption in favor of the defendant's choice of counsel, and this presumption can be overcome only by an actual or serious potential for conflict. *Id*. "Under *Wheat*, the risk of non-persuasion rests with the prosecution rather than the defendant." *Rodriguez*, 382 F.3d at 672. The court's role is to determine "whether the attorney has an actual conflict, a potential conflict, or no conflict at all," *United States v. Perez*, 325 F.3d 115, 125 (2d Cir. 2003), and to evaluate any conflict for its effect on the defendant's right to effective assistance of counsel. In addition, before accepting a waiver of conflict-free counsel, Rule 44(c) requires the court to advise each defendant of his right to effective assistance of counsel.[1]

This framework requires the court to first determine the specific nature of any actual or potential conflict of interest arising from the joint representation. If there is

---

[1] The district court is not required to "follow some pre-ordained, detailed script" or "conduct a long-winded dialogue with counsel and defendants" before accepting a defendant's waiver of his right to conflict-free counsel. *United States v. Flores*, 5 F.3d 1070, 1078 (7th Cir. 1993). Instead, for a defendant's waiver to be valid, the judge need only "inform each defendant of the nature and importance of the right to conflict-free counsel and ensure that the defendant understands something of the consequences of a conflict." *Id.*; *accord United States v. Castillo*, 965 F.2d 238, 241-42 (7th Cir. 1992); *United States v. Roth*, 860 F.2d 1382, 1388-89 (7th Cir. 1988).

no conflict of interest, then the defendant's choice of counsel must be respected unless there is some institutional concern requiring disqualification. *See Gonzalez-Lopez*, 548 U.S. at 152 ("The court has . . . an 'independent interest in ensuring that criminal trials are conducted within the ethical standards of the profession and that legal proceedings appear fair to all who observe them.'" (quoting *Wheat*, 486 U.S. at 160)). If, on the other hand, the court finds an actual conflict of interest that seriously undermines counsel's effectiveness, "there can be no doubt that [the court] may decline a proffer of waiver, and insist that defendants be separately represented." *Wheat*, 486 U.S. at 162. A conflict that amounts to a breach of the code of professional ethics obviously qualifies, *see id.*, as does a concrete conflict of interest which though not a violation of professional ethics, nonetheless impedes the attorney's ability to provide effective assistance of counsel within the meaning of *Strickland*.

The disqualification decision becomes more difficult, however, if the joint representation presents only a *potential* for conflict. Because "a possible conflict inheres in almost every instance of multiple representation," *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980), the Supreme Court has said that only a *serious* potential conflict will justify overriding the defendant's choice of counsel, *Wheat*, 486 U.S. at 164. This requires an inquiry into the likelihood that the potential conflict will mature into an actual conflict and the degree to which it threatens the right to effective assistance of counsel. Accordingly, before disqualifying counsel based on a *potential* conflict, the district court should evaluate (1) the likelihood that

the conflict will actually occur; (2) the severity of the threat to counsel's effectiveness; and (3) whether there are alternative measures available other than disqualification that would protect the defendant's right to effective counsel while respecting his choice of counsel. The first inquiry is the most important; a conflict that would seriously undermine counsel's effectiveness is not a basis for disqualification if it has little likelihood of occurring.

For example, in *United States v. Algee*, we affirmed the disqualification of the defendant's chosen attorney in a conspiracy case because the attorney had previously represented two coconspirators whom the government intended to call to testify as principal witnesses against the defendant. 309 F.3d 1011, 1014 (7th Cir. 2002). At the other end of the spectrum is our decision in *Rodriguez*, which though not a joint-representation case nonetheless provides an example of a potential for conflict that was not sufficient to justify disqualification of counsel. In *Rodriguez* prosecutors told the trial court that a detective who had participated in the investigation of a codefendant was an "integral part of the case" and a potential witness against the defendant Rodriguez. 382 F.3d at 671-72. One of Rodriguez's attorneys, however, had represented the detective in an unrelated real-estate transaction. *Id.*

The trial court disqualified the attorney, and on habeas review we held this decision was unreasonable. *Id.* at 672-73. The prosecution had not explained—either at the time the disqualification decision was made or at any time afterward—what admissible evidence the detective

would have offered, and the prosecution never did call the detective to testify. *Id.* at 672. We concluded in *Rodriguez* that disqualification was not warranted because the possibility that the conflict of interest would eventually occur was simply too remote. *Id.*

*Rodriguez* also explains how the availability of protective measures other than disqualification may make disqualification unreasonable. Rodriguez had two attorneys, one of whom had no prior relationship with the detective who was a potential witness. We noted that the cocounsel without the conflict could have cross-examined the detective if he had testified and this "would have eliminated all risks." *Id.* at 673. This "easy solution," we said, made it unreasonable to deprive Rodriguez of his counsel of choice. *Id.* We have also noted in another case that to avoid a conflict of interest, the district court may limit examination of a witness and may "on rare occasions" exclude evidence. *United States v. Messino*, 181 F.3d 826, 830 (7th Cir. 1999); *cf. United States v. Diozzi*, 807 F.2d 10, 13-14 (1st Cir. 1986) (suggesting that it is appropriate to exclude testimony if the same evidence is available from other sources).

The conflict the district court identified in this case was the mere *possibility* that either Womack or Turner would decide to cooperate with the government against the other. This does not amount to an actual conflict. Nor is it, in the circumstances of this case, a serious potential conflict justifying the disqualification of Turner's counsel of choice. Recall that the government bears the risk of nonpersuasion here. *Rodriguez*, 382 F.3d at 672; *see also Perez*, 325 F.3d at 125 ("Where the right to counsel of

choice conflicts with the right to an attorney of undivided loyalty, the choice as to which right is to take precedence must generally be left to the defendant and not dictated by the government."). At the Rule 44(c) hearing, the prosecutor never said the government intended to seek either defendant's cooperation or testimony against the other. To the contrary, a line assistant in the prosecutor's office wanted to talk to Womack about an "unrelated matter," *not* about cooperating with the government against Turner. If the government needed or wanted assistance from either Womack or Turner, it certainly didn't act like it. Womack had been in custody for a year and a half, and he was awaiting sentencing when Turner was arrested. Turner had been in custody for six weeks at the time of the Rule 44(c) hearing. Not once during that time did the government express the slightest interest in obtaining the cooperation of one defendant against the other. Moreover, the government already had the assistance of multiple cooperating coconspirators.

For their part, neither Turner nor Womack wanted to help the government. Baris's proffer of a conflict waiver confirmed their lack of interest in providing assistance to prosecutors. In short, there is nothing in this record to suggest that the potential conflict of interest identified by the district court had a serious likelihood of maturing into an actual conflict. Nor is there anything to support a conclusion that the conflict was sufficiently severe that Turner's right to effective counsel would be jeopardized. The potential for a conflict of interest in this case was hardly "clear" and "absolute," as the district judge thought; instead, it was entirely speculative.

At bottom, the judge disqualified Baris because one or the other of his clients *might* change his mind about cooperating with the government, but that possibility for conflict of interest "inheres in almost every instance of multiple representation*." Cuyler*, 446 U.S. at 348. The district court essentially applied a rule that joint representation *necessarily* violates the defendant's right to effective counsel; this directly contradicts *Wheat. See* 486 U.S. at 159-60.

Our legal system generally presumes that one attorney may effectively represent multiple codefendants. This presumption is reflected in Rule 44(c) and Supreme Court precedent. *See Holloway v. Arkansas*, 435 U.S. 475, 482 (1978) ("Requiring or permitting a single attorney to represent codefendants, often referred to as joint representation, is not *per se* violative of constitutional guarantees of effective assistance of counsel."). The presumption is also reflected in professional ethical standards. For example, the *Model Rules of Professional Conduct* assume as a general matter that an attorney may represent multiple clients notwithstanding a conflict of interest, if the client gives informed consent. *See* MODEL RULES OF PROF'L CONDUCT R. 1.7; *accord* ILL. RULES OF PROF'L CONDUCT R. 1.7(b) (permitting joint representation despite a conflict of interest provided each client gives informed consent and "the lawyer reasonably believes the representation will not be adversely affected" despite a conflict of interest); S.D. ILL. LOC. R. 83.4(d)(2) (adopting *Illinois Rules of Professional Conduct*). The critical inquiries, according to the Model Rules, are whether "the likelihood that a difference in interests will eventuate and, if it does, whether it will materially interfere with the lawyer's

independent professional judgment in considering alter-
natives or foreclose courses of action that reasonably
should be pursued on behalf of the client." MODEL RULES
OF PROF'L CONDUCT R. 1.7 cmt. 8. The Model Rules (and
the Illinois standards, which the Southern District of
Illinois follows) also permit a lawyer to represent
multiple clients making an aggregate guilty or no-contest
plea. *See* MODEL RULES OF PROF'L CONDUCT R. 1.8(g); *see
also* ILL. RULES OF PROF'L CONDUCT R. 1.8(e).

In light of the minimal risk that joint representation
would have undermined either Turner's or Womack's
right to the effective assistance of counsel, the district
court had other options available that would have re-
spected Turner's right to his chosen counsel *and* protected
his right to effective counsel. We note that although Rule
44(c)(2) requires the court to "personally advise each
defendant of the right to effective assistance of counsel,
including separate representation," here, the judge
never got that far. Baris invited the court to question his
client, but the judge entered the disqualification order
without making any personal inquiry of Turner. This
inhibited the court's ability to fully assess the risk that a
conflict would actually arise and evaluate whether
other protective measures short of disqualification were
available. Baris also suggested that the court accept
Turner's conflict waiver and revisit the matter later if
circumstances were to develop that would raise a
conflict question. The court rejected this option as well.
Finally, Turner's court-appointed attorney was present
at the Rule 44(c) hearing. The court could have asked
him to confer with Turner to assess the risk that a conflict
of interest would arise and ensure that Turner fully

understood the particular ramifications of joint representation in the context of the case. These measures might not have "eliminated all risks," *Rodriguez*, 382 F.3d at 673, but the risk that the potential conflict would ripen into an actual conflict was never very great in the first place.

The district court's decision to disqualify Baris was based on the mere possibility that either Womack or Turner might have a change of heart and decide to assist the government against the other. This possibility exists in nearly all cases of joint representation. As such, the court applied what amounts to a per se rule against joint representation, which is contrary to *Wheat*. 486 U.S. at 159-60. The court's order was therefore premised on a mistake regarding the applicable legal standards, which is necessarily an abuse of discretion. *See Christian Legal Soc'y v. Walker*, 453 F.3d 853, 867 (7th Cir. 2006) (citing *Koon v. United States*, 518 U.S. 81, 100 (1996)).

Accordingly, we hold that the district court's disqualification order violated Turner's Sixth Amendment right to choose his own counsel. Under *Gonzalez-Lopez*, this constitutional violation is a structural error not subject to review for harmlessness. 548 U.S. at 148-51. Turner is entitled to a new trial. We therefore VACATE his conviction and sentence and REMAND the case for retrial.