In the

# United States Court of Appeals

## For the Seventh Circuit

No. 16-2400

WENDELL WEAVER,

*Petitioner-Appellant,*

*v.*

WALTER NICHOLSON,*

*Respondent-Appellee.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 12 C 10100 — **Sara L. Ellis**, *Judge.*

ARGUED JANUARY 5, 2018 — DECIDED JUNE 15, 2018

Before KANNE, ROVNER, and HAMILTON, *Circuit Judges.*

KANNE, *Circuit Judge.* Wendell Weaver was convicted of
first degree murder and sentenced to forty years' imprison-
ment. In a petition for a writ of habeas corpus, he alleges that
his constitutional rights were violated by the trial court's dis-
qualification of his counsel of choice, the ineffective assistance

---

*Walter Nicholson, the current warden of Stateville Correctional Center,
replaced Randy Pfister as the respondent-appellee.

of his replacement counsel, the state's use of certain testimony at trial, and the trial court's admission of "other crimes" evidence. The district court denied the petition. We affirm.

## I. BACKGROUND

Previous state court decisions exhaustively relate Weaver's case. (R. 20-16, Order affirming judgment of trial court, at 14–31; R. 20-25, Order affirming dismissal of post-conviction petitions, at 25–55.) We provide only those facts relevant to this appeal and accept the state courts' factual findings as correct because Weaver has not presented clear and convincing evidence to the contrary. *See* 28 U.S.C. § 2254(e)(1); *Todd v. Schomig*, 283 F.3d 842, 846 (7th Cir. 2002).

### A.    Proceedings in the trial court

Police officers arrested Wendell Weaver on August 12, 2003 for the murder of Randy Sanders. Before trial, the court decided two motions relevant to this appeal. First, the state moved to disqualify Weaver's attorney, Charles Murphy, on the ground that he represented a potential state witness, Rondell Traywick. The trial court heard argument and disqualified Murphy. Second, Weaver moved *in limine* to bar evidence that he pointed a gun—later identified as the murder weapon—at a police officer during an unrelated incident. The trial court denied the motion.

At trial, Danny Callico—a friend of Sanders—took the stand. He testified that he and Sanders sold drugs together and that he was with Sanders when Sanders was fatally shot on April 4, 2002. That day Sanders had driven Callico and another associate, Lamont Delaney, to a McDonald's parking lot where the three of them smoked marijuana. Callico testified

that Weaver fired shots into Sanders's car when Sanders stopped at an intersection after leaving the lot.

In addition to Callico's testimony, the state also presented evidence linking cartridge casings recovered near the scene and bullets found in Sanders's body to a pistol police recovered from Weaver during an unrelated incident. During the trial, Officer Pinal described the recovery of the weapon. As he told it, on September 9, 2002, Pinal and another officer saw Weaver place a gun in his waistband outside a sandwich shop. Pinal testified that he and the other officer approached Weaver and identified themselves as police. As they approached, Weaver drew the gun and fled. Pinal further testified that Weaver pointed the handgun at him as he fled and later tossed the gun into a vacant lot. At trial, a firearms expert testified that shots fired from the pistol Pinal recovered from Weaver matched the casings and bullets recovered from the scene.

Weaver's counsel attempted to undermine both Callico and Pinal on cross-examination. Callico admitted that he was a heroin dealer with an extensive criminal background. He also acknowledged that had initially told police that he did not know who the shooters were before identifying Weaver a year later. It also became clear that Callico had changed his justification for initially withholding from police that Weaver had killed Sanders. While Callico had told the grand jury he was afraid to tell police about Weaver's involvement, at trial he claimed he failed to do so because he planned to "take care of" Weaver. On cross, Officer Pinal acknowledged that he never had the gun or magazine tested for fingerprints and that, during the chase, he lost sight of Weaver for thirty seconds.

Clifton Lewis, a bystander, also testified. He explained that he saw the passenger of one car shooting the driver of another car. He saw no one shooting from the street, and could not identify the shooter.

During closing argument, Weaver's counsel emphasized the time gap between Sanders's murder and the recovery of the pistol. He also highlighted that Callico's unreliable testimony was the only direct evidence that Weaver shot Sanders. At the conclusion of the trial, a jury convicted Weaver of first degree murder.

### B. Direct appeal and collateral attacks in state court

After his conviction, Weaver found little success in state court. On direct appeal, the Illinois appellate court affirmed his conviction. And the Illinois Supreme Court rejected his petition for leave to appeal that decision.

Weaver then filed a counseled state post-conviction petition, *see* 725 Ill. Comp. Stat. 5/122-1, and a *pro se* petition for relief from judgment, *see* 735 Ill. Comp. Stat. 5/2-1401. Both petitions were dismissed. In a consolidated appeal, the Illinois appellate court affirmed the dismissals. The Illinois Supreme Court later denied Weaver's request for leave to appeal the decision.

### C. Federal proceedings

In December 2012, Weaver filed a petition for a writ of habeas corpus in federal district court. *See* 28 U.S.C. § 2254. In relevant part, the petition claimed that:

(1) the trial court denied him the right to his counsel of choice;

(2) his trial counsel was ineffective for failing to (a) call a number of witnesses to testify, and (b) properly cross-examine Callico;

(3) the state violated his due process rights by using Callico's coerced and perjured testimony; and

(4) the trial court violated his due process rights by admitting evidence of other crimes related to the September 2002 incident.

The district court denied the petition, which we now review *de novo*. *Smith v. Gaetz*, 565 F.3d 346, 351 (7th Cir. 2009).

## II. ANALYSIS

Weaver seeks habeas relief under the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254. Under the Act, we may grant relief if a state court's decision was (1) contrary to, or an unreasonable application of, clearly established Supreme Court precedent; or (2) rested on an unreasonable factual determination. 28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law" or "if the state court confronts facts that are materially indistinguishable from a relevant Supreme Court precedent" but reaches an opposite result. *Williams v. Taylor*, 529 U.S. 362, 404–05 (2000). A state court "unreasonably applies" clearly established law if "the state court correctly identifies the governing legal principle from [Supreme Court] decisions but unreasonably applies it to the facts of the particular case." *Bell v. Cone*, 535 U.S. 685, 694 (2002). A state court decision rests on an unreasonable factual determination when "the state court determined an underlying factual issue against the clear and

convincing weight of the evidence." *Morgan v. Hardy*, 662 F.3d 790, 798 (7th Cir. 2011). "[S]o long as fair-minded jurists could disagree on the correctness of the state court's decision," the decision is reasonable. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Under the Act, we review the last state court decision to address the merits of a prisoner's claim. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). In Weaver's case, the Illinois appellate court last addressed the merits of his claims on direct appeal and when it affirmed the denial of his post-conviction petitions.

We now turn to Weaver's choice-of-counsel, ineffective assistance, due process, and "other evidence" claims. As to the first three claims, we find the decision of the state appellate court reasonable. Weaver's final claim is procedurally defaulted.

### A. Weaver's choice-of-counsel claim fails.

Before trial, the Illinois trial court disqualified Weaver's counsel, Charles Murphy, due to a potential conflict arising from one of the state's potential witnesses, Rondell Traywick. Murphy had previously represented Traywick in a criminal matter. And just a month before the disqualification hearing, Murphy visited Traywick in jail to discuss his recent criminal charges and Traywick's intention to accept the state's plea offer. According to the state, Gary "Lupe" Mullen—an associate of Weaver's—had told Traywick that he and Weaver were involved in the shooting.

Weaver claims that the disqualification denied him his Sixth Amendment right to the counsel of his choice. *See Wheat*

*v. United States*, 486 U.S. 153, 159 (1988). To prevail under Section 2254(d), Weaver must demonstrate that the Illinois appellate court unreasonably applied *Wheat*—the Supreme Court's clearly established precedent on the issue.

*Wheat* requires that a court "recognize a presumption in favor of a petitioner's counsel of choice." 486 U.S. at 164. Nevertheless, a demonstration of an actual conflict or serious potential for conflict may overcome this presumption. *Id*. Moreover, under *Wheat*, "[t]he evaluation of the facts and circumstances of each case … must be left primarily to the informed judgment of the trial court," *id*., which has "broad latitude" to "rel[y] on instinct and judgment based on experience in making its decision." *Id*. at 163.

Here, the Illinois appellate court reasonably applied *Wheat*. The court began with *Wheat* and its presumption that the Sixth Amendment protects a defendant's right to counsel. Then, it explained that the protection is not absolute and applied a test from the Illinois Supreme Court decision, *People v. Ortega*, 209 Ill. 2d 354 (1988), to determine if Weaver was entitled to his counsel of choice despite a potential conflict.

In doing so, the appellate court noted that "the trial court determined that Charles Murphy's prior professional relationship and continuing communication with Traywick signified a potential conflict of interest where Traywick was a possible witness against [Weaver]." (R. 20-16 at 22.) It further noted the trial court's finding that "Charlie Murphy's prison consultation with Traywick could be considered representation [and that concurrent representation of Traywick could create] a *per se* conflict of interest." (*Id.*)  It then held that the trial court properly disqualified Murphy because Murphy's

concurrent representation of Traywick could leave the conviction vulnerable to being overturned. It also highlighted the state and public's right to a fair trial, and the court's interest in the integrity of the verdict. This was a reasonable application of *Wheat*.

In so holding, we reject Weaver's suggestion that *Rodriguez v. Chandler* compels us to grant relief in his favor. 382 F.3d 670 (7th Cir. 2004). In *Rodriguez*, we granted habeas relief when the trial court disqualified the defendant's attorney because the attorney was also representing one of the state's potential trial witnesses, a detective, in an unrelated real estate matter. *Id*. at 672–674. This case is distinct because the risks presented by Murphy's simultaneous representation are much clearer. For instance, Murphy could have pressured Traywick to provide testimony favorable to Weaver at Traywick's own detriment in his pending criminal case. Alternatively, Murphy may have spared Traywick from his most incisive questions during cross-examination hoping to help keep Traywick from incriminating himself or disclosing details harmful to his own prosecution. This potential for conflict was further compounded by discovery suggesting that Weaver was Traywick's boss and that he had arranged for Murphy to represent Traywick in his prior criminal case.

We likewise reject Weaver's suggestion that Traywick's failure to testify mandates relief. *See id.* at 673. *Wheat* expressly noted that disqualification decisions are made "not with the wisdom of hindsight after the trial has taken place, but in the murkier pre-trial context when relationships between parties are seen through a glass, darkly." 486 U.S. at 162. *Wheat* thus

permitted pretrial disqualification even when potential conflict does not "burgeon into an actual conflict as the trial progresses." *Id.* at 163.

For these reasons, the Illinois appellate court reasonably applied *Wheat*. Weaver's choice-of-counsel claim therefore fails.

### B. Weaver's ineffective assistance claims fail.

Weaver contends that trial counsel was ineffective for failing to (1) cross-examine Callico effectively; (2) call a witness to testify that Callico told him he could not identify the shooter; (3) call a number of witnesses to dispute Officer Pinal's testimony; and (4) call witnesses to testify that another person had confessed to shooting Sanders. Weaver also argues that his counsel's performance was ineffective as a whole. *See Thompson v. Battaglia*, 458 F.3d 614, 616 (7th Cir. 2006). For all his claims, Weaver must demonstrate that the state court unreasonably applied *Strickland v. Washington*, the Supreme Court's clearly established precedent on the issue. 466 U.S. 668 (1984).

Under *Strickland*, Weaver must show that his counsel's performance fell below an "objective standard of reasonableness" and that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." 466 U.S. at 688, 694. We give state courts broad latitude in applying this general standard. *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (describing the standard of review on *Strickland* claims evaluated under § 2254 as "doubly deferential"). Thus, "only a clear error in applying *Strickland* would support a writ of habeas corpus." *Murrell v. Frank*, 332 F.3d 1102, 1111 (7th Cir. 2003) (quoting

*Dixon v. Snyder*, 266 F.3d 693, 700-01 (7th Cir. 2001)). None of
Weaver's claims meet this bar.

Weaver first argues that trial counsel was ineffective for
failing to cross-examine Callico about his prior statement to
police that the shooter was on foot. Weaver contends that
such questioning would have further impeached Callico be-
cause it contradicted some physical evidence and another wit-
ness's testimony. When presented with this claim, the Illinois
appellate court found that counsel's performance was ade-
quate and that Weaver was not prejudiced. This holding was
reasonable. Although trial counsel did not question Callico
about that particular statement, through vigorous cross-ex-
amination trial counsel undercut Callico's general credibility
as a witness and his ability to identify Sanders's shooter.

Second, Weaver insists that trial counsel was ineffective
for failing to contact Callico's associate, Lamont Delaney, or
call him to testify that Callico admitted that he did not see
who the shooters were. But Weaver has not shown that trial
counsel failed to investigate Delaney, only that counsel never
located him. As for the failure to call Delaney, we presume
that trial counsel's decision not to call a witness was strategic.
*See Strickland*, 466 U.S. at 689 (the defendant must overcome
the presumption "that counsel's conduct falls within the wide
range of reasonable professional assistance."). Weaver has not
overcome that presumption. In fact, during the trial, Weaver's
counsel used Delaney's absence to cast doubt on the state's
theory. The Illinois appellate court therefore reasonably ap-
plied *Strickland* when it rejected this claim on direct appeal.

Third, Weaver argues that trial counsel was ineffective for
failing to call four witnesses to dispute Officer Pinal's claim
that Weaver had the murder weapon. Here again, we find that

the Illinois appellate court reasonably applied *Strickland*. We again presume that Weaver's counsel did not call the witnesses as a matter of trial strategy and the conflicting affidavits offered by the four potential witnesses fail to overcome that presumption.

Fourth, Weaver contends that his trial counsel was ineffective for failing to call Jason Dortch and Monique Tolliver to testify that Gary "Lupe" Mullen—an associate of Weaver's— confessed to shooting Sanders. Once more, we find that the Illinois appellate court's rejection of this claim was reasonable. As a threshold matter, the state court found that Weaver procedurally defaulted his claim as to Dortch because he failed to present it on direct appeal. This independent and adequate state ground procedurally defaults this claim for the purpose of federal habeas review. *See Kaczmarek v. Rednour*, 627 F.3d 586, 592 (7th Cir. 2010).

Even excusing the default, the appellate court's finding that the testimony would have been inadmissible hearsay was based on a reasonable application of Supreme Court precedent. *See Chambers v. Mississippi*, 410 U.S. 284, 298–302 (1973) (providing that otherwise inadmissible hearsay against the declarant's penal interest may be offered when it is critical to the defense and bears "considerable assurance of [its] reliability"). Here, the state could not cross-examine Lupe (he died days after Sanders's murder), and Dortch and Tolliver's statements were not otherwise corroborated. Under these circumstances, it was reasonable for the state court to conclude that Dortch and Tolliver's statements lacked the assurances of trustworthiness demanded by *Chambers*. *Id*.

Finally, we consider Weaver's claim that trial counsel was ineffective "as a whole" due to "overall deficient performance." *See Thompson*, 458 F.3d at 616. For all the above reasons, this claim fails as well.

### C. *Weaver's Napue claim fails.*

Weaver argues that the state violated his due process rights because it "knowingly allowed Callico to falsely testify that he saw Weaver 'shooting into the car.'" Had the state coerced Callico into identifying Weaver as the shooter and subsequently used that perjured testimony, it would have violated Weaver's due process rights. *See Brady v. Maryland*, 373 U.S. 83, 86 (1963); *Napue v. Illinois*, 360 U.S. 264, 269 (1959). But the Illinois appellate court rejected this argument, finding that the police and state had neither coerced Callico's testimony nor had they been aware of any perjury. Specifically, the court noted that Callico's affidavit did not contain sufficient facts to show the state directed Callico's testimony or knew that he was allegedly lying about Weaver's involvement.

This decision rested on findings of fact. Without clear and convincing evidence to the contrary, we must accept these factual findings as true. *See Todd*, 283 F.3d at 846; 28 U.S.C. § 2254(d)(2). Weaver directs the court to the pre-trial inconsistencies and post-trial recantation, but those are insufficient to reverse the state court's factual findings. *See United States v. Saadeh*, 61 F.3d 510, 523 (7th Cir. 1995) ("[M]ere inconsistencies in testimony by government witnesses do not establish the government's knowing use of false testimony") (quoting *United States v. Verser*, 916 F.2d 1268, 1271 (7th Cir. 1990)); *Mendiola v. Schomig*, 224 F.3d 589, 593 (7th Cir. 2000) ("Disbelief of recantations is sensible … because the formality of a court, the presence of the litigants, and the gaze of a judge

induce witnesses to hew more closely to the truth than they do when … attempting to appease the losing side's advocate."). Because Weaver does not point to clear and convincing evidence to the contrary, we accept the state court's finding that the state did not pressure Callico to perjure himself nor was it aware of any perjury. As a result, the state court's denial of Weaver's *Napue* claim was reasonable.

### D. Weaver's "other crimes" evidence claim fails.

Weaver also argues that the trial court violated his due process rights by admitting evidence of "other crimes," specifically that he pointed a gun at Officer Pinal during the 2002 incident. This claim is procedurally defaulted. "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). "To exhaust state remedies in the Illinois courts, the prisoner must include his claims in a petition for leave to appeal to the Illinois Supreme Court." *Snow v. Pfister*, 880 F.3d 857, 864 (7th Cir. 2018) (citing *O'Sullivan*, 526 U.S. at 845–46). Weaver did not include this claim in either of his petitions to the Illinois Supreme Court. And because Weaver has not established cause for the default, we will not excuse it. *See Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

### III. CONCLUSION

The Illinois appellate court reasonably applied relevant Supreme Court precedent when it denied Weaver's choice-of-counsel, ineffective assistance of counsel, and due process claims. And Weaver procedurally defaulted his "other

crimes" evidence claim when he failed to ask the Illinois Supreme Court to review it. Accordingly, we AFFIRM the judgment of the district court denying Weaver's petition for a writ of habeas corpus.