In the

# United States Court of Appeals

## For the Seventh Circuit

No. 20-1356

ADEMUS AKADEAMEUER SAECHAO,

*Petitioner-Appellant*,

*v.*

CHERYL EPLETT, Warden, Oakhill Correctional Institution,

*Respondent-Appellee*.

Appeal from the United States District Court
for the Western District of Wisconsin.
No. 17-cv-370-slc — **Stephen L. Crocker**, *Magistrate Judge*.

ARGUED NOVEMBER 4, 2020 — DECIDED MARCH 16, 2021

Before EASTERBROOK, RIPPLE, and ROVNER, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Charged in Wisconsin state court with armed robbery, false imprisonment, and related offenses, Ademus Saechao retained attorney Jay Kronenwetter to represent him. The state charged Manuel Alonso-Bermudez, Joseph Rohmeyer, and Harley Schultz with participating in the same crimes, though their cases proceeded separately from Saechao's. Because the dockets were separate, the state's public defender organization did not know

that Kronenwetter was representing Saechao when it appointed him to represent Alonso-Bermudez too. This created problems that have led to this petition for collateral relief under 28 U.S.C. §2254.

Everyone quickly saw that there was a potential for conflict of interest, if only because Alonso-Bermudez might decide to testify against Saechao, or the reverse. Kronenwetter himself told the judge in Saechao's prosecution that he was concerned about the potential conflict and uneasy about representing both defendants. But he did so for some six weeks, until he withdrew as Alonso-Bermudez's lawyer and the public defender organization named John Bachman to take his place. This did not satisfy the judge in Saechao's prosecution; he wanted an unconditional waiver of any conflict from both Saechao and Alonso-Bermudez. Saechao provided one; Alonso-Bermudez declined. He said that he would waive a conflict in Saechao's current prosecution but not with respect to other offenses in which the two may have been confederates. Bachman told the judge in Saechao's case that his client's refusal to execute a general waiver made Kronenwetter's position as Saechao's lawyer untenable. As the trial date approached, and the prosecutor listed Alonso-Bermudez as a potential witness in Saechao's case, the trial judge reached that conclusion and disqualified Kronenwetter.

By then Bachman had indicated that Alonso-Bermudez was willing to sign a general waiver. Bachman announced that position, however, about the same time as Alonso-Bermudez fired him, and the judge thought that Bachman no longer could speak for Alonso-Bermudez. Saechao went to trial with a new lawyer and was convicted. Wisconsin's ap-

pellate court affirmed, rejecting his argument that the trial judge had violated the Constitution by depriving him of his chosen lawyer. And a federal district court denied Saechao's request for collateral relief. 2020 U.S. Dist. LEXIS 33308 (W.D. Wis. Feb. 24, 2020). The magistrate judge's comprehensive and thoughtful opinion makes it unnecessary for us to provide greater detail about the events in state court.

A state court's decision addressing the merits of a legal claim, as Wisconsin's judiciary did, cannot be upset on collateral review unless the adjudication "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States". 28 U.S.C. §2254(d)(1). Wisconsin's Court of Appeals recognized that *Wheat v. United States*, 486 U.S. 153 (1988), supplies the controlling authority, and the federal district court held that the state judiciary had applied *Wheat* reasonably. Indeed, the combination of *Wheat* with §2254(d)(1) gives the state a double dose of deference. Under *Wheat*, even in federal court (and even on direct appeal, and even when there have been unequivocal waivers of any conflict), the trial judge has discretion to disqualify counsel to avoid a serious risk of conflict. 486 U.S. at 158–64. And "[t]he more general the [federal] rule, the more leeway [state] courts have in reaching outcomes in case-by-case determinations." *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004).

*Wheat* does insist that disqualification is inappropriate unless there is serious risk of an actual conflict, and Saechao pitches his argument on this point. He observes that the trial judge disqualified Kronenwetter in part because the judge did not think that criminal-defense lawyers ever should rep-

resent multiple clients charged with the same crime. Moreover, Saechao adds, the state's court of appeals gave some weak reasons for thinking that Kronenwetter faced a serious risk of conflict. The prosecutor has abandoned a few of the state court's reasons. But the fact remains that the weakness of some reasons is just a case-specific shortcoming, not a legal conflict between the state judiciary's approach and the *Wheat* standard. As long as other, sufficient, reasons remain, the state's decision withstands federal collateral review.

The federal magistrate judge thought that at least one of the state judiciary's reasons suffices, given the deference required by *Wheat* and the additional layer of deference provided by §2254(d)(1): the fact that Alonso-Bermudez appeared on the prosecution's witness list. That created a risk that Kronenwetter would be called on to cross-examine his former client, potentially using confidential information he had received. Saechao concedes that this is a good reason for disqualification in principle but maintains that it is not a good reason in practice, because (he insists) the prosecutor was unlikely to call Alonso-Bermudez. Saechao was charged with being one among a criminal gang of four. Rohmeyer and Schultz had agreed to testify for the prosecution. So why, Saechao asks, would the prosecutor have called Alonso-Bermudez, who was standing on his right to a trial and was unlikely to turn state's evidence?

We know that, when Saechao's trial came, the prosecutor did not call Alonso-Bermudez. But hindsight is a poor guide to action. Raising the possibility of calling Alonso-Bermudez as a witness is hard to call a ploy to achieve Kronenwetter's removal. All too often co-defendants who have promised to testify balk or "lose their recollection" at trial. And co-

defendants who proclaim their innocence and insist that they will go to trial change their minds on the eve of trial, agree to plead guilty, and negotiate for terms—which may include a promise to testify against a confederate in crime. On the day that the trial judge disqualified Kronenwetter, Rohmeyer and Schultz were promising to cooperate, while Alonso-Bermudez said that he would not do so. By the day of trial the situation could have been reversed. An unconditional waiver of conflicts from Alonso-Bermudez might have persuaded the trial judge to take the risk that a decision by Alonso-Bermudez to testify would not ruin the trial if Kronenwetter remained as Saechao's lawyer, but Alonso-Bermudez was unwilling to provide a comprehensive waiver—and that was a problem, because cross-examination of Alonso-Bermudez at Saechao's trial could have ventured into some of Alonso-Bermudez's other crimes. This left a serious risk, and *Wheat* gives the trial judge a measure of deference when deciding how to proceed.

Saechao maintains that reasoning along the lines just laid out would conflict with *United States v. Turner*, 594 F.3d 946 (7th Cir. 2010), which tells district judges not to assume too readily that a potential for conflict will ripen into a serious actual conflict. Put that way, the devil is in the phrase "too readily"; *of course* a judge should not do anything too readily and should not be a sucker for claims about conflicts that may never come to fruition. The issue in any given case is whether the trial judge abused his discretion in thinking that the risk of a serious conflict had been established. An affirmative answer for Turner does not imply that the same answer is called for in Saechao's case.

Perhaps more important, *Turner* just doesn't matter on collateral review under §2254(d)(1), which says that the writ must not issue unless the state court's decision is contrary to "clearly established Federal law, *as determined by the Supreme Court of the United States*" (emphasis added). This means that decisions by the federal courts of appeals do not count, except to the extent that they illuminate the meaning of the Supreme Court's decisions. See *Kernan v. Cuero*, 138 S. Ct. 4 (2017); *Parker v. Matthews*, 567 U.S. 37, 48–49 (2012); *Fayemi v. Ruskin*, 966 F.3d 591, 594 (7th Cir. 2020). *Turner* concerned how federal district judges should manage the discretion they possess under *Wheat*; it does not modify the Supreme Court's own standard or limit the discretion of state judges.

AFFIRMED